825 P.2d 20

Kevin C. ROGERS, a minor By and Through his next best friend and natural mother, Sheila E. STANDLEY, Plaintiffs–Appellants,

v.

Randolph RETRUM and Jane Doe Retrum, husband and wife; Prescott Unified School District, Defendants–Appellees.

No. 1 CA–CV 89–356.

Court of Appeals of Arizona, Division 1, Department E.

July 18, 1991.

As corrected Aug. 13, 1991.

Review Denied March 3, 1992.

Musgrove & Drutz, P.C. by Mark W. Drutz, Christopher Ware, Prescott, for plaintiffs-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Steven D. Smith, Tony J. Rudman, Timothy F. Bolden, Phoenix, for defendants-appellees.

## OPINION

FIDEL, Presiding Judge.

Plaintiff Kevin C. Rogers appeals from summary judgment entered for defendants Randolph Retrum and Prescott Unified School District on plaintiff's negligence claim. We affirm summary judgment because plaintiff's injury did not result from an unreasonable risk that may be charged to the conduct of these defendants.

## FACTUAL AND PROCEDURAL HISTORY

We state the facts, as always, in the light most favorable to the party appealing from summary judgment.

On the morning of February 5, 1989, Kevin C. Rogers, a sixteen-year-old junior at Prescott High School, completed an advanced electronics test. Although Rogers anticipated a good grade, the teacher, Randolph Retrum, publicly gave him a failing grade. When Rogers asked why, Retrum threw the test in his direction and answered, "Because I don't like you."

Although class was not over, Retrum permitted students to leave class as they pleased, and Prescott High School permitted students to enter and leave the campus freely.[1]

Humiliated and upset, Rogers left class with a friend named Natalo Russo, punching a wall and kicking some trash cans on his way to Russo's car. As Russo tried to calm him, the friends left campus in Russo's car by a meandering route that eventually led them eastward on Iron Springs Road. There Russo, the driver, accelerated and lost control, passing in a curve at a speed exceeding 90 miles per hour. When the car struck an embankment, landed on its nose, and slid several hundred feet, Rogers was ejected and sustained the injuries for which he sues.

After the accident, Retrum admitted that Rogers had actually passed the test. Retrum had falsely given Rogers a failing grade because Rogers had always done

well in the class and Retrum "wanted [Rogers] to know what it felt like to fail."

Rogers settled negligence claims against Natalo Russo and his parents, and the trial court granted summary judgment rejecting Rogers's negligence claims against Retrum and the district. From this judgment, Rogers appeals.

## PLAINTIFF'S CLAIM OF NEGLIGENCE

We first point out that Retrum's alleged conduct, however egregious, is not the causal focus of plaintiff's claim. If, in the flush of first reaction, plaintiff had blindly run into harm's way, we would examine the range of foreseeable, unreasonable risks that might be attributed to a teacher's false and deliberate humiliation of an impressionable teenager entrusted to his class.

Plaintiff, however, stepped into his friend Natalo Russo's car. And plaintiff's counsel has conceded at oral argument that there is no evidence that Retrum's words to Rogers affected Russo's operation of his car.

Counsel instead targets Retrum's "open class" and the district's "open campus" policies as the causal negligence in this case. By these policies, according to counsel, defendants breached their supervisory duty to plaintiff and exposed him to the risk of highway injury when he should have been in class. We confine our analysis to this claim.

## DUTY

The first question in a negligence case is whether the defendants owed a duty to the plaintiff. We find that defendants had a relationship with plaintiff that entailed a duty of reasonable care.

Our supreme court has distilled, as the essence of duty, the obligation to act reasonably in the light of foreseeable and unreasonable risks. See *Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984) (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton*

---

1. The defendants dispute these allegations, but also acknowledge that we must accept them as truthful for the purpose of reviewing summary judgment.

*on the Law of Torts* § 53, at 356 (5th ed. 1984) [hereinafter Prosser and Keeton] (" '[D]uty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty [if it exists] is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk.")).

■ Clearly, school teachers and administrators are "under [an] obligation for the benefit of" the students within their charge. *See id.* This obligation includes the duty not to subject those students, through acts, omissions, or school policy, to a foreseeable and unreasonable risk of harm. *See Jesik v. Maricopa County Community College Dist.*, 125 Ariz. 543, 546, 611 P.2d 547, 550 (1980) ("A public school district in Arizona is liable for negligence when it fails to exercise ordinary care under the circumstances."); *see also Chavez v. Tolleson Elementary School Dist.*, 122 Ariz. 472, 476, 595 P.2d 1017, 1021 (App.1979) ("[T]he duty of the school personnel ... as to the supervision of students in their charge [is] one of ordinary care.").

## LEGAL CAUSE

■ We next take up defendants' argument that summary judgment may be affirmed on the ground that Russo's driving was an intervening, superseding cause. We do so before reaching the dispositive question of breach of duty because questions of breach and cause are too often confused and this case may serve to delineate them. We are guided by the comment of Professors Prosser and Keeton that

[i]n [certain] cases the standard of reasonable conduct does not require the defendant to recognize the risk, or to take precautions against it.... In these cases the defendant is simply not negligent. When the courts say that his conduct is not "the proximate cause" of the harm, they not only obscure the real issue, but suggest artificial distinctions of causation which have no sound basis, and can only arise to plague them in the future.

Prosser and Keeton, *supra* § 42, at 275; *see also Tucker v. Collar*, 79 Ariz. 141, 145, 285 P.2d 178, 181 (1955) ("Much confusion has resulted from many courts disposing of cases upon the ground defendant's act was not the proximate cause of an injury when the proper basis was that there was no negligence.").

One element of legal cause is "but-for causation" or causation-in-fact. *See Ontiveros v. Borak*, 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983) ("[A]s far as causation-in-fact is concerned, the general rule is that a defendant may be held liable if his conduct contributed to the result and if that result would not have occurred 'but for' defendant's conduct."). This element is adequately established; a jury might reasonably find that, but for the open campus and classroom policies plaintiff complains of, Rogers and Russo would have been at school at 9:10 a.m. on February 5, 1989, and not in a car on Iron Springs Road.

The more elusive element of legal cause is foreseeability, and this, according to defendants, is lacking in this case. They argue:

[N]o reasonable person could or should have realized Russo would drive in a criminally reckless manner at 100 miles an hour so as to cause an accident. Thus it is the intervening superseding act of fellow student Russo, not the act of Retrum or Prescott Schools[,] which was the proximate cause of plaintiff's injury.

We decline to affirm the trial court's judgment on this ground.

First, "we must take a broad view of the class of risks and victims that are foreseeable, and the particular manner in which the injury is brought about need not be foreseeable." *Schnyder v. Empire Metals, Inc.*, 136 Ariz. 428, 431, 666 P.2d 528, 531 (App.1983) (citing *McFarlin v. Hall*, 127 Ariz. 220, 222, 619 P.2d 729, 731 (1980)). It is not unforeseeable that mobile high school students, permitted to leave campus during classroom hours, will be exposed to the risk of roadway accidents.

■ Second, the reckless or criminal nature of an intervenor's conduct does not

place it beyond the scope of a duty of reasonable care if that duty entails foresight and prevention of precisely such a risk. *See Rossell v. Volkswagen of America*, 147 Ariz. 160, 169, 709 P.2d 517, 526 (1985), *cert. denied*, 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986) ("[T]he scope of the risk created by the negligence of the original actor may include the foreseeable negligent or criminal conduct of others."); *see also* Restatement (Second) of Torts § 281 comment h ("If the duty is designed, in part at least, to protect the other from the hazard of being harmed by the intervening force, or by the effect of the intervening force operating on the condition created by the negligent conduct, then that hazard is within the duty, and the intervening force is not a superseding cause.").

This case illustrates the point of comment h. The condition created by defendants' negligent conduct, according to plaintiff, was exposure to a preventable risk of vehicular injury off school grounds. Inherent in the risk of vehicular injury is the prospect of an intervenor's negligent or reckless driving of a car; to foresee the injurious end is to foresee that a careless intervenor, one way or another, may be the means. For this reason, it does not advance analysis in this case to focus on the details of the intervenor's conduct. The essential question is not whether the district might have foreseen the risk of vehicular injury but whether the district, given its supervisory responsibilities, was obliged to take precautionary measures. This

question, we conclude, is neither one of duty nor causation; it is one of breach.[2]

## UNREASONABLE RISK

■ Not every foreseeable risk is an unreasonable risk. It does not suffice to establish liability to prove (a) that defendant owed plaintiff a duty of reasonable care; (b) that an act or omission of defendant was a contributing cause of injury to plaintiff; and (c) that the risk of injury should have been foreseeable to defendant. The question whether the risk was unreasonable remains. This last question merges with foreseeability to set the scope of the duty of reasonable care.[3] *Cf.* 3 F. Harper, F. James & O. Gray, *The Law of Torts* § 18.2, at 656–57 (2d ed. 1986) ("[T]he inquiry into the scope of duty is concerned with exactly the same factors as is the inquiry into whether conduct is unreasonably dangerous (i.e., negligent).").

■ To decide whether a risk was unreasonable requires an evaluative judgment ordinarily left to the jury. "Summary judgment is generally not appropriate in negligence actions." *Tribe v. Shell Oil Co., Inc.*, 133 Ariz. 517, 518, 652 P.2d 1040, 1041 (1982). However, in approaching the question of negligence or unreasonable risk,

> the courts set outer limits. A jury will not be permitted to require a party to take a precaution that is clearly unreasonable.... Thus, for example, the jury may not require a train to stop before passing over each grade crossing in the country.

*Id.* at 603, 703 P.2d at 547 (citations omitted). The same cannot be said in this case. Here, to paraphrase *Williams*, assuming that the school's failure to restrict egress from campus created an unreasonable risk of vehicular injury off campus, plaintiff's injury was within the scope of foreseeable risk. Analysis thus shifts from the causal question whether the risk was foreseeable to the negligence question whether the risk was unreasonable.

**2.** A useful contrast is provided by *Williams by Williams v. Stewart*, 145 Ariz. 602, 703 P.2d 546 (App.1985). When a maintenance worker entered a swimming pool to unclog the drain, the dirty water allegedly caused his preexisting sinus infection to spread to his brain. Division Two of this court affirmed summary judgment, stating:

> Even assuming that [a persistent failure to clean the pool] created an unreasonable risk of some kinds of harm, Williams' injury was well outside the scope of foreseeable risk, was unrelated to what made the conduct negligent, and no liability resulted. This is not a case "where the duty breached was one imposed to prevent the type of harm which plaintiff ultimately sustained."

**3.** *Williams v. Stewart* is a case where foreseeability analysis, not unreasonable risk analysis, placed the injury outside the scope of duty of reasonable care.

3 F. Harper, F. James & O. Gray, *supra* § 15.3, at 355–57.[4]

*Coburn v. City of Tucson* is a recent example of the court's preemption of the question of unreasonable risk. There, a child eastbound on a bicycle was struck and killed by a southbound driver in an intersection collision. 143 Ariz. at 51, 691 P.2d at 1079. The child had ignored a stop sign and entered the intersection in the lane of westbound (oncoming) traffic. The child could not see the driver approaching because a bush at the northwest corner obscured his view. The child's parents sued the city for failure to remove the bush; the city both controlled the street and owned the lot where the bush grew. *Id.* The evidence established, however, that the bush would not have obstructed the view of south- or northbound traffic for any eastbound cyclist or driver who had stayed in the eastbound lane and stopped at the stop sign. *Id.* at 54, 691 P.2d at 1082. The supreme court affirmed summary judgment for the city, finding that the city had not breached its duty to provide intersections that are reasonably safe.

> The lack of liability may be framed in terms of duty, but we prefer that duty be recognized as a distinct element involving the obligation of the actor to protect the other from harm. Here, there was a duty, but no negligence; therefore, there is no liability.

*Id.* (citations omitted).

We make the same determination in this case. Members of our mobile society face the risk of collision whenever they are in cars. This risk is arguably higher for teenage passengers of teenage drivers. The school in this case, however, did nothing to increase this general risk. It did not, for example, leave students inadequately supervised or instructed in a driver's education class. It did not tolerate drinking at a school affair. It simply chose not to restrict students to campus during the school day and thereby shield them from the ordinary risk of vehicular harm that they would face when out of school. We conclude that "the standard of reasonable conduct [did] not require the defendant[s] to ... take precautions against" that risk. Prosser and Keeton, *supra* § 42, at 275. More simply stated, the defendants' omission did not create an unreasonable risk of harm.

Although, in taking this issue from the jury, we find that reasonable persons could not differ, we do not mask the element of policy in our choice. *See* 3 F. Harper, F. James & O. Gray, *supra* § 15.3, at 357–58. First, the question of the legal consequence of an open campus high school policy is not a random judgment best left to case-by-case assessment, but a question likely to recur and one on which school boards need some guidance. *See* Weiner, *The Civil Jury Trial and the Law–Fact Distinction,* 54 Cal.L.Rev. 1867, 1926–27 (1966). Second, policy considerations appropriate to local school boards—local transportation options, inter-school transfer arrangements, and extracurricular activity locations, for example—are pertinent to the decision whether restrictions should be placed on high school students coming and going from the campus during ordinary hours. Finally, and most significantly, we decline to make high school districts that adopt an open campus policy insurers against the ordinary risks of vehicular inju-

---

**4.** In describing the question whether a risk was unreasonable as requiring evaluative judgment, we acknowledge that the question does not fall neatly into the category of question of fact or the category of question of law. These categories serve less as guides to analysis than as labels that attach after the court has decided whether to leave evaluation to the jury or preempt it for the court. *See* James, *Functions of Judge and Jury in Negligence Cases,* 58 Yale L.J. 667, 667–68 (1949) (The common generality that questions of law are for the court and questions of fact for the jury "has never been fully true in either of its branches and tells us little or nothing that is helpful."); *see also Farrell v. Waterbury Horse R.R.,* 60 Conn. 239, 247, 21 A. 675, 676 (1891) ("[T]he result of comparing the conduct with the standard is generally spoken of as 'negligence' or the 'finding of negligence.' Negligence, in this last sense, is always a conclusion or inference, and never a fact in the ordinary sense of that word."); Weiner, *The Civil Jury Trial and the Law–Fact Distinction,* 54 Cal.L.Rev. 1867, 1881 (1966) ("[C]onsideration of the jury's role in negligence cases should proceed unadorned, and unobscured, by the law-fact terminology.").

ry that students face in driving off school grounds.

This is not to suggest that a school's supervisory omissions can never give rise to liability for an accident off campus. We do not pretend that the range of foreseeable and unreasonable risks from supervisory omissions is automatically circumscribed by the school fence. *See Hoyem v. Manhattan Beach City School Dist.*, 22 Cal.3d 508, 515–16, 150 Cal.Rptr. 1, 5, 585 P.2d 851, 855 (1978) (rejecting argument that off-campus consequences of on-campus supervisory lapses are beyond the range of duty).

Nor do we suggest that a calculus of unreasonable risk will yield equivalent results at every level of the schools. We leave for resolution in other unsupervised egress cases such questions as whether parents' supervisory expectations may reasonably differ at differing levels of the schools and whether the risks that may be deemed unreasonable may likewise differ with the age of the student involved.[5] Our limited holding in this case is that the defendant high school and its teacher did not subject the plaintiff high school student to an unreasonable risk of vehicular injury by permitting unsupervised egress from class and campus during the school day.

## CONCLUSION

Because plaintiff's injury was not a result within an unreasonable risk created by defendants, we hold that defendants were not negligent. The trial court's summary judgment in favor of defendants is affirmed.

LANKFORD and McGREGOR, JJ., concur.

5. In a prior elementary school case, our court held that the abduction and slaying of a ten-year-old child who left campus without permission were unforeseeable consequences of the school's alleged supervisory lapse. *Chavez v. Tolleson Elementary School District*, 122 Ariz. 472, 478, 595 P.2d 1017, 1023 (App.1979). How-

ever, because cases after *Chavez* have stressed that "we must take a broad view of the class of risks and victims that are foreseeable," we have recognized the question of unreasonable risk—not the question of foreseeable risk—as dispositive in this case.