893 P.2d 26

Marlin DAVIS, Sr. and Joyce Davis, husband and wife, surviving parents of Marlin E. Davis, Jr., deceased and Herbert E. Davis, deceased, and Matthew A. Davis, deceased, and Robert H. Hensley and Pamela Hensley, husband and wife, surviving parents of Robert H. Hensley II, deceased, Plaintiffs–Appellants,

v.

The CESSNA AIRCRAFT CORPORATION, a Kansas corporation, Teledyne, Inc., a Delaware corporation, Arizona Public Service Company, Defendants–Appellees.

No. 1 CA–CV 91–0216.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 20, 1994.

Review Denied April 25, 1995.

---

Begam, Lewis, Marks, Wolfe & Dasse, P.A. by Elliot G. Wolfe, Cora C. Perez, Phoenix, for appellants.

Jennings, Strouss & Salmon, P.L.C. by James M. Ackerman, Michael A. Beale, Phoenix, for appellee Teledyne, Inc.

Gust, Rosenfeld by James H. Marburger, Phoenix, for appellee Arizona Public Service Co.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Michael W. Carnahan, Christopher Robbins, Phoenix, for appellee Cessna Aircraft Corp.

## OPINION

TOCI, Judge.

Shortly after departure from the Sedona airport, a Cessna T210 airplane collided with unmarked power lines over Interstate High-way 17 ("I–17") near Camp Verde, Arizona. The crash killed the pilot, Marlin E. Davis, Jr., and the passengers, Herbert E. Davis, Matthew A. Davis, and Robert H. Hensley II (collectively, "the decedents").

Marlin and Joyce Davis and Robert and Pamela Hensley (collectively, "plaintiffs"), the surviving parents of the decedents, sued Cessna Aircraft Corporation ("Cessna"), Teledyne Industries, Inc. ("Teledyne"), and the Arizona Public Service Company ("APS") for wrongful death. Plaintiffs sought recovery against Cessna and Teledyne for negligence and products liability, claiming that the aircraft's defectively designed fuel system caused an in-flight engine failure. Plaintiffs sued APS for negligently locating the power lines and for failing to mark them so that they were visible to aircraft.

The trial court concluded that APS owed no duty of care to the decedents and granted summary judgment in favor of APS on plaintiffs' negligence claim. The court dismissed plaintiffs' strict liability claim against Cessna, finding that the claim was barred by the statute of repose, Ariz.Rev.Stat.Ann. ("A.R.S.") section 12–551 (1992) (held unconstitutional, *Hazine v. Montgomery Elevator Co.*, 176 Ariz. 340, 861 P.2d 625 (1993)). After a jury trial on the remaining claims against Cessna, the jury returned verdicts in favor of Cessna and Teledyne.

Plaintiffs appeal from the summary judgment in favor of APS, the dismissal of their strict liability claim against Cessna, and the jury verdicts in favor of Cessna and Teledyne. In resolving the issues on appeal, we reach the following conclusions: (1) APS did owe a duty of care to the decedents, but its failure to mark its power lines did not create an unreasonable risk of harm to normally operating aircraft and, therefore, APS did not breach its duty to the decedents to guard against the risk of unreasonable harm; (2) the trial court erred by admitting the National Transportation Safety Board's ("NTSB") probable cause conclusion that the crash was caused by the pilot "buzzing" the highway; (3) because of our supreme court's decision in *Hazine*, decided after the trial in this matter, holding A.R.S. section 12–551 unconstitutional, the trial court erred by dismissing plain-

tiffs' strict liability claim against Cessna; and (4) because plaintiffs produced no evidence from which reasonable people could conclude that Teledyne's engine was defective, the trial court should have granted a directed verdict in favor of Teledyne.

Plaintiffs have raised numerous other issues they contend require reversal. Because this matter will be retried to a different trial judge, we confine this opinion to only those issues necessary to dispose of this appeal. Accordingly, we affirm the judgment in favor of Teledyne, affirm the summary judgment in favor of APS, reverse the judgments in favor of Cessna, and remand for a new trial on plaintiffs' claims against Cessna.

## I. FACTUAL AND PROCEDURAL HISTORY

Cessna moved to dismiss plaintiffs' strict liability claim, arguing that it was barred by Arizona's statute of repose, A.R.S. section 12–551. The trial court agreed, dismissed the claim, and certified the order as a final judgment under Rule 54(b), Arizona Rules of Civil Procedure. On appeal, another panel of this court concluded that because the trial court's order was not a final judgment, the order was not appealable. *See Davis v. Cessna Aircraft Corp.*, 168 Ariz. 301, 305, 812 P.2d 1119, 1123 (App.1991). Consequently, the panel dismissed the appeal for lack of subject-matter jurisdiction. *Id.* In this appeal, plaintiffs again assert that the trial court erred in dismissing their strict liability claim against Cessna.

The remaining negligence claim against Cessna and the negligence and strict liability claims against Teledyne were tried to a jury. During trial, the parties presented opposing theories about the cause of the crash. Plaintiffs argued that the crash occurred when the pilot attempted an emergency landing on I-17 after a defect in the airplane's fuel system caused the engine to fail. Cessna and Teledyne argued, however, that the airplane struck the power lines while the pilot was "buzzing" traffic on the highway.

Several eyewitnesses who saw the airplane just before it crashed testified at trial, either in person or by deposition. Plaintiffs' witnesses essentially testified that they observed the airplane flying at a lower than normal altitude and that no engine noise was associated with its flight, thus indicating engine failure. In contrast, Cessna and Teledyne's witnesses testified that the airplane was flying about thirty-five to fifty feet above the highway at a speed of approximately 130 miles per hour with its engine operating normally. Several defense witnesses also testified that the airplane gave no indication of engine failure before the crash. The jury returned verdicts in favor of Cessna and Teledyne.

## II. DISCUSSION

### A. APS

APS moved for summary judgment on plaintiffs' negligence claim, arguing that it owed no duty of care to the decedents because it was not reasonably foreseeable that the pilot would attempt an emergency landing on I-17 at the site of the power lines. We disagree. Under Arizona law, APS owed a duty of reasonable care to the decedents. Whether APS violated this duty depends on whether its failure to mark the power lines created an unreasonable risk of harm to the decedents. We conclude that as a matter of law, APS's conduct in not marking the power line did not fall below the standard of care. Thus, APS was not negligent and summary judgment was appropriate. We also conclude that because plaintiffs have not raised the issue of APS's negligence in locating the power lines across the highway, this issue is abandoned.

■ Generally, a plaintiff may maintain a negligence action if he or she proves: (1) a duty or obligation recognized by law requiring the defendant to conform to a certain standard of conduct to protect others from unreasonable risks; (2) a failure on the defendant's part to conform to the standard required, i.e., a breach of the duty; (3) a reasonably close causal connection between the conduct and the resulting injury; and (4) actual loss or damage. *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983).

■ The threshold issue of whether the defendant owed any duty of care to the plain-

tiff is usually decided by the court as a matter of law. *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). Duty is a " 'question of whether the defendant is under any obligation for the benefit of a particular plaintiff.' " *Ontiveros*, 136 Ariz. at 508, 667 P.2d at 208 (quoting William L. Prosser, *Handbook on the Law of Torts* § 53, at 324 (4th ed. 1971)). In the absence of precedent, unraveling the legal doctrines pertaining to duty and applying them to a particular situation is often a difficult task. Jefferson L. Lankford & Douglas A. Blaze, *The Law of Negligence in Arizona* § 2.5, at 11 (1992). Our supreme court, however, at least implicitly, has recognized that the owner of power lines owes a duty to use due care to protect helicopters operating in navigable airspace against unreasonable risks of harm. *See Arizona Pub. Serv. Co. v. Brittain*, 107 Ariz. 278, 280, 486 P.2d 176, 178 (1971).[1]

■ Although APS is correct that the aircraft in this case was not operating in navigable airspace when it collided with APS's power lines, we decline to hold that this negates the application of *Brittain* to these facts. Duty is, after all, "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Ontiveros*, 136 Ariz. at 508, 667 P.2d at 208. We conclude that the owner of power lines owes a duty to the general public, including aviators, to guard against unreasonable risks of harm. Thus, APS owed the decedents a duty to act reasonably in the light of foreseeable and unreasonable risks.

■ Because we conclude that APS owed the decedents a duty to act reasonably, we must determine whether APS breached that duty. The issue is whether reasonable people could differ that APS's failure to mark the power lines was conduct that fell below the standard of care and thus breached the

duty. *See Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990) (Summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense."). Breach of duty is measured by the foreseeable risk of injury from the conduct. *Markowitz*, 146 Ariz. at 357, 706 P.2d at 369. But "[n]ot every foreseeable risk is an unreasonable risk." *Rogers v. Retrum*, 170 Ariz. 399, 402, 825 P.2d 20, 23 (App.1991). Consequently, even if we assume that APS should have foreseen that an aircraft might make an emergency landing on the freeway, that is not the end of our inquiry.[2]

To establish liability, it is not sufficient merely to prove that defendant owed a duty of reasonable care, that defendant's act or omission was a contributing cause, and that the risk of injury should have been foreseeable. *Id.* "The question whether the risk was unreasonable remains. This ... question merges with foreseeability to set the scope of the duty of reasonable care." *Id.* (footnote omitted).

■ Thus, the inquiry into the scope of duty involves exactly the same considerations as the inquiry into whether conduct is unreasonably dangerous, i.e., negligent. *Id.* (citation omitted). While the question whether a risk is unreasonable is ordinarily left to the jury, the courts set the outer limits. *Id.* (citing 3 Fowler V. Harper et al., *The Law of Torts* § 15.3, at 355–56 (2d ed. 1986)). " 'A jury will not be permitted to require a party to take a precaution that is clearly unreasonable.... Thus, for example, the jury may not require a train to stop before passing over each grade crossing in the country.' "

---

1. Pursuant to Air Traffic and General Operating Rules, 14 C.F.R. § 91.119(d) (1993), helicopters are excepted from the regulation that aircraft may not operate in non congested areas at altitudes of less than 500 feet. Thus, unlike this case, the helicopter in *Brittain* was operating in navigable airspace at the time of the wire strike.

2. Under a foreseeability analysis, " 'we must take a broad view of the class of risks and victims that are foreseeable, and the particular manner in which the injury is brought about need not be foreseeable.' " *Rogers*, 170 Ariz. at 401, 825 P.2d at 22 (quoting *Schnyder v. Empire Metals, Inc.*, 136 Ariz. 428, 431, 666 P.2d 528, 531 (App.1983) (citations omitted)).

*Id.* (quoting 3 Harper, *supra*, § 15.3, at 356–57).

■ Our supreme court's decision in *Coburn v. City of Tucson*, 143 Ariz. 50, 691 P.2d 1078 (1984), demonstrates how the court functions as a "gatekeeper" to preempt the question of unreasonable risk from going to the jury. There, a child riding a bicycle eastbound, on the wrong side of the street, ignored a stop sign and was struck and killed by a southbound driver in an intersection collision. *Coburn*, 143 Ariz. at 51, 691 P.2d at 1079. The approaching driver's view of the child was obscured by a bush on a municipally owned lot in the northwest corner of the intersection. *Id.* The child's parents sued the city for failing to remove the bush. *Id.* At trial, the evidence showed that the bush would not have obscured the view of any eastbound bicyclist who had approached the intersection in the proper lane of travel and stopped at the stop sign. *Id.* at 54, 691 P.2d at 1082. The supreme court affirmed summary judgment for the city, finding that the city had not breached its duty to provide intersections that are reasonably safe:

> While the bush may obstruct a driver's view of eastbound travelers who use the westbound land and failed to stop at the intersection, it obviously does not obstruct the view for or the vision of eastbound travelers in the proper lane who do stop at the stop sign. The city is not bound to provide perfect intersections or streets, but only those which are "reasonably safe." What is "reasonably safe" takes into consideration certain minimal expectations that travelers follow the usual rules of the road.

*Id.; see also Rogers*, 170 Ariz. at 403, 825 P.2d at 23 (defendant high school and defendant teacher did not subject plaintiff student to unreasonable risk of vehicular injury by permitting unsupervised egress from campus during school day); *Church of Jesus Christ of Latter Day Saints v. Superior Court*, 148 Ariz. 261, 263, 714 P.2d 431, 433 (App.1985) (city did not breach duty to keep streets reasonably safe to protect child from injury where child broke "usual rules of the road" by failing to yield right-of-way to an oncoming car in riding his bicycle from private parking lot into city street without stopping).

We adopt the same rationale in this case. Thus, an owner of power lines is obligated to maintain the lines so that they do not present an unreasonable risk of harm to pilots. In the case of helicopters that are legally allowed to operate at low altitudes, and are known to operate in a particular area, the owner may be required to mark power lines in that area to make them reasonably safe. *See Brittain*, 107 Ariz. at 280–81, 486 P.2d at 178–79. And, if such lines are located so close to an airport that they may constitute an unreasonable risk to approaching and departing aircraft, marking or other precautions may be necessary to make the power lines reasonably safe. But here, in determining whether the power lines are reasonably safe, we take into consideration "certain minimal expectations" that air traffic will fly at normal altitudes. *See Coburn*, 143 Ariz. at 54, 691 P.2d at 1082.

We are not persuaded by plaintiffs' argument that the area where the crash occurred is "in the vicinity of" four or five airports or airstrips, one of which was approximately ¼ to ½ mile away. Plaintiffs presented no evidence that the wire strike occurred while the aircraft was attempting to land at one of these airports. Furthermore, plaintiffs' expert, Larry Tiffin, a 12,000–hour pilot, could only state that "it is *infrequent* that one encounters unmarked power lines in close proximity to an airport." (Emphasis added.) Neither this evidence nor the other evidence submitted by plaintiffs in opposition to APS's motion for summary judgment supports an inference that the failure to mark power lines within ¼ to ½ mile of an airport created an unreasonable risk of harm to ordinary aircraft travel.

Nevertheless, plaintiffs cite *Bach v. State*, 152 Ariz. 145, 730 P.2d 854 (App.1986), in support of their argument that APS acted negligently. There, the driver of a motor vehicle fell asleep at the wheel, went off of the road, and collided with the headwall of an unguarded concrete culvert located 3½ feet off the paved shoulder. *Id.* at 146, 730 P.2d at 855. The driver sued the state, claiming that it negligently designed and maintained

the accident site. *Id.* After the trial court granted a directed verdict for the state on the ground that the state owed no duty to the driver, the driver appealed. *Id.* On appeal, this court reversed, holding:

> The state's duty to maintain a safe highway encompasses the foreseeable risk that for any number of reasons, including negligence or inadvertence, a traveler might deviate from the paved surface onto an adjacent shoulder. Accordingly, we hold that the state's duty to maintain safe highways extends to those areas adjacent to the paved roadway where a vehicle might reasonably be expected to travel.

*Id.* at 148, 730 P.2d at 857.

Plaintiffs assert that the *Bach* rationale should apply equally to APS because APS should have foreseen that an airplane might "deviate from a higher altitude and crash into electrical wires if they are not marked." Plaintiff's reliance on *Bach*, however, is misplaced. As we observed above, although it is true that *breach of duty* is measured by the foreseeable risk of injury, *Markowitz*, 146 Ariz. at 357, 706 P.2d at 369, foreseeability by itself does not establish negligence. The question whether the risk of harm was unreasonable merges with foreseeability to establish the *scope of the duty* of reasonable care. *Rogers*, 170 Ariz. at 402, 825 P.2d at 23. In *Bach*, the court held that the scope of the state's duty to maintain a safe highway encompassed the foreseeable risk that a motorist might, for one reason or another, travel on the adjacent shoulder. 152 Ariz. at 148, 730 P.2d at 857. In other words, the court held that the unguarded culvert adjacent to the roadway presented both a foreseeable and an unreasonable risk of harm to ordinary traffic. *Id.* at 149–50, 730 P.2d at 858–59.

Thus, the question is not whether APS could have foreseen the risk that an airplane would attempt an emergency landing at this location, but whether APS was required to take precautionary measures. *See Rogers,* 170 Ariz. at 402, 825 P.2d at 23. In other words, did the standard of reasonable conduct require APS to take precautions against the risk of an airplane making an emergency landing at this location? *Id.* at 403, 825 P.2d at 24. We recognize that, ordinarily, this question is for the jury to decide. In this case, however, the undisputed evidence establishes that APS's lines in this location are reasonably safe for ordinary aircraft travel. We conclude that the standard of reasonable care does not require APS to make its system perfectly safe by marking this power line crossing so that it might be more visible to a pilot who might choose to make an emergency landing at this location. *See Coburn,* 143 Ariz. at 54, 691 P.2d at 1082. Consequently, APS's failure to mark the power lines in question was not actionable negligence. Although the trial court erroneously concluded that no duty existed, we affirm the grant of summary judgment in favor of APS because the trial court reached the right result. *See Passey v. Great Western Assocs. II,* 174 Ariz. 420, 424, 850 P.2d 133, 137 (App.1993); *Collins v. State,* 166 Ariz. 409, 413 n. 1, 803 P.2d 130, 134 n. 1 (App.1990).

**B. Cessna**

**1. NTSB Report**

The NTSB investigated the crash and published a report containing facts and its conclusion about the probable cause of the accident. The trial judge admitted the NTSB's probable cause conclusion in evidence. We conclude that this was reversible error.

Before trial, the trial court denied plaintiffs' motion in limine to preclude admission of the entire NTSB report. The trial court ruled that the factual information in the report was admissible while the probable cause conclusion was inadmissible. Later, during the direct examination of Cessna's expert, plaintiffs' counsel argued that Cessna could not inquire into the NTSB's conclusions. Judge Marquardt then changed his ruling, stating:

> If—I finally made a decision that I think this'll be the ground rule. This comes as no surprise. If we have an expert witness on the stand and if he testifies based upon a document that he used in forming his opinion, *any portion* of that document that he used in forming his opinion then becomes admissible to the jury.

*Whether it becomes—if it's an opinion, whether it's factual material, whatever it is, whether it's factual data, that is going to be revealed to the jury.* And it can be revealed basically by this witness saying: I read the N.T.S.B. report and in it, it said so and so, and I based my decision upon that. This is the foundation for my opinion evidence.

(Emphasis added.)

Smith then testified as follows:

Q. We know that the N.T.S.B. investigated this accident?

A. Yes, Sir.

Q. And did you take into account the Board's finding as to the cause of this accident?

A. It was part of the data available, yes, Sir.

Q. What was the board's finding?

A. In this case?

Q. Yes.

A. *The Board's—probable cause in this case was—if I remember it correctly, intentional low flying, buzzing was the finding, and insufficient lookout.*

Q. And in the Board's opinion, that was the cause of this accident.

A. Yes, Sir, it was.

(Emphasis added.)

We agree with plaintiffs that the probable cause conclusion of the NTSB report is inadmissible under 49 U.S.C.App. section 1441(e) (1988). Section 1441(e) provides:

No part of any report or reports of the National Transportation Safety Board relating to any accident or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports.

Although section 1441(e) appears to prohibit the admission of any part of any NTSB report, most federal courts have not construed it so broadly. The majority of federal courts permit the admission of factual findings contained in NTSB reports, while barring the admission of the NTSB's probable cause conclusion. *See, e.g., Curry v. Chevron, USA,* 779 F.2d 272, 274 (5th Cir.1985);

*Travelers Ins. Co. v. Riggs,* 671 F.2d 810, 816 (4th Cir.1982); *In Re Air Crash Disaster at Stapleton Int'l Airport,* 720 F.Supp. 1493, 1496 (D.Colo.1989).

The Ninth Circuit has interpreted federal statutes and regulations similar to section 1441(e) as prohibiting the admission of the probable cause conclusions of accident reports by other governmental agencies. In *Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc.,* 767 F.2d 1379, 1384–85 (9th Cir.1985), the court held that the district court's exclusion of the NTSB's conclusions about the probable cause of a fire aboard a ship was not error. Likewise, in *Huber v. United States,* 838 F.2d 398, 402–03 (9th Cir.1988), the court held that a coast guard regulation nearly identical to section 1441(e) prohibited the admission of a Coast Guard investigating officer's conclusion about the cause of a shipwreck.

Plaintiffs contend that *In re Air Crash Disaster at Stapleton International Airport,* 720 F.Supp. at 1495–96, supports their assertion that the Ninth Circuit decisions in *Protectus* and *Huber* preclude admission of the entire NTSB report. We disagree. Although *Stapleton* does state that the rule in the Ninth Circuit is that section 1441(e) acts as a complete bar to admission of NTSB reports, we find that the district court in *Stapleton* misread the Ninth Circuit decisions. In *Protectus,* 767 F.2d at 1385, the Ninth Circuit stated:

Although strict application of the statute has been somewhat modified in recent cases ... so as to permit some reports of staff investigators and other personnel into evidence, *such reports, to the extent they express agency views or conclusions as to the probable cause of the accident, are excludable under the rule.*

(Emphasis added) (citations omitted). In our view, the emphasized portion of the above quote indicates that the Ninth Circuit reads the prohibition against admitting NTSB reports to extend only to the probable cause conclusion and not to the factual findings. Thus, we are not persuaded by plaintiffs' interpretation of the Ninth Circuit cases.

Because we conclude that the trial court erred in admitting the NTSB's probable cause conclusion, we must determine whether such error was prejudicial, thus requiring reversal. The improper admission of evidence is reversible error if we are unable to conclude that the jury would have reached the same verdict without the evidence. *Groener v. Briehl,* 135 Ariz. 395, 398, 661 P.2d 659, 662 (App.1983). In this case, it was the jury's function to determine the cause of the crash. The jury, however, was improperly informed that the NTSB had already decided the issue by finding that the pilot was solely responsible for the crash. Consequently, we conclude that the jury might not have reached a verdict in favor of Cessna had the trial court excluded the NTSB's probable cause conclusion.

Our conclusion is bolstered by the Ninth Circuit's decision in *Huber.* There, the court held that a United States Coast Guard report about a boat accident was improperly admitted in evidence in violation of a regulation similar to section 1441(e). *Huber,* 838 F.2d at 403. The court reversed, rejecting the argument that the error was harmless:

> Finally, because the reports concluded that Coast Guard negligence was essentially solely responsible for the tragedy, we find unpersuasive Monterey Navigation's argument that their admission was harmless error.

*Id.* Thus, we find that the trial court's admission of the NTSB's probable cause conclusion was reversible error.

Cessna argues that the trial court did not err by admitting the entire NTSB report because the court had earlier admitted several hearsay documents relied upon by plaintiffs' experts. In other words, Cessna asserts that had the trial court not admitted the entire NTSB report, it would have essentially applied one rule of evidence to plaintiffs and another stricter rule to Cessna. Cessna also contends that the entire NTSB report would be admissible under either Rule 703, Arizona Rules of Evidence, as the facts or data upon which its expert reasonably relied, or under Rule 803(8), Arizona Rules of Evidence, as the government-report exception to the hearsay rule. We reject both arguments.

First, a distinction exists between the hearsay evidence admitted by the trial court as the basis for plaintiffs' experts' opinions, and the NTSB report offered by defendant. In *Hernandez v. Faker,* 137 Ariz. 449, 451, 671 P.2d 427, 429 (App.1983), we stated:

> The comment to Rule 703 contains the statement, "If the facts or data meet this standard and form the basis of admissible opinion evidence they become admissible under this rule for the limited purpose of disclosing the basis for the opinion *unless they should be excluded pursuant to an applicable constitutional provision, statute, rule or decision.*"

(Emphasis added.) Here, the facts or data relied upon by plaintiffs' experts and admitted in evidence were not excluded by a constitutional provision, statute, rule, or decision. In contrast, Cessna's expert's testimony about the NTSB's probable cause conclusion was clearly prohibited by 49 U.S.C.App. section 1441(e), a federal statute. Consequently, if the trial court had excluded, as it should have, the testimony of Cessna's expert about the NTSB's probable cause conclusion, it would not have applied a double standard for the admission of evidence.

Second, Cessna's expert's testimony regarding the NTSB's probable cause conclusion was not admissible under Rule 703 because Cessna failed to lay a proper foundation for the testimony. Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type *reasonably relied upon by experts in the particular field* in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

(Emphasis added.) "[A]n expert witness may testify on direct examination as to the basis for his opinion if the facts and data are of a type reasonably relied upon by experts in that [particular] field." *Hernandez,* 137 Ariz. at 453, 671 P.2d at 431. Although Cessna's expert testified that he had relied on the NTSB's conclusions, he did not state

that other experts in his particular field reasonably rely on such conclusions to render an expert opinion. Thus, his conclusions were not admissible under Rule 703.

▨ Furthermore, the NTSB's probable cause conclusion is not admissible under the public records exception to the hearsay rule, Rule 803(8), Arizona Rules of Evidence. Rule 803(8)(C) provides for the admission "in civil actions ... [of] *factual findings* resulting from an investigation made pursuant to authority granted by law." (Emphasis added.) The rule does not, however, provide for the admission of a government agency's *conclusions.*

▨ Even if the NTSB probable cause conclusion had been admissible under Rule 703 or·803(8), we conclude that it was rendered inadmissible by 49 U.S.C.App. section 1441(e). The fact that absent section 1441(e), the NTSB's conclusion might be admissible under Rule 703 or 803(8) is immaterial. *See Huber,* 838 F.2d at 403 ("Congress may impose limitations on the admissibility of evidence beyond those provided in the Federal Rules of Evidence.").

▨ Finally, Cessna argues that plaintiffs opened the door to· the admission of the entire NTSB report by having their expert read, on direct examination, the probable cause conclusion from the report. We reject this argument. Cessna ignores the fact that it had successfully obtained the admission of the NTSB report four days earlier, while the jury was excused during a recess in the cross-examination of Cessna's expert. Although plaintiffs were the first to refer to the NTSB report after it was admitted, the reference was an effort by plaintiffs to draw the sting from the damage already done by the trial court's erroneous ruling. Plaintiffs were entitled to attempt to blunt the prejudicial effect of the admission of the NTSB's conclusion that pilot error caused the crash. Charles T. McCormick, *McCormick on Evidence* § 57 (John W. Strong ed., 4th ed. 1992); *see also Tucker v. Reil,* 51 Ariz. 357, 369–70, 77 P.2d 203 (1938) (party whose valid objection to incompetent evidence is overruled does not waive error by cross-examination about objectionable testimony); *Inspiration Consol. Copper Co. v. Bryan,* 31 Ariz.

302, 309, 252 P. 1012, 1015 (1927) (party may counteract hearsay evidence improperly admitted by offering another hearsay document from same source). Thus, the fact that plaintiffs referred to the report after it was admitted does not justify the trial court's initial error in admitting it.

## 2. Statute of Repose

Before trial, Cessna moved to dismiss plaintiffs' strict liability claim on the ground that it was barred by Arizona's statute of repose, A.R.S. section 12–551. That section provides, in part:

> [N]o product liability action may be commenced and prosecuted if the cause of action accrues more than twelve years after the product was first sold for use or consumption, unless the cause of action is based upon the negligence of the manufacturer or seller or a breach of an express warranty provided by the manufacturer or seller.

Cessna argued that plaintiffs' claim was barred because it was brought more than twelve years after the Davis's Cessna T210 was first sold. The trial court agreed with Cessna and dismissed plaintiffs' claim.

After the briefs were filed in this case, our supreme court held A.R.S. section 12–551 unconstitutional. *See Hazine,* 176 Ariz. at 343–44, 861 P.2d at 628–29. This court then ordered the parties to file supplemental briefs on the issue of whether *Hazine* applied retroactively to this case. After reviewing the supplemental briefs and the applicable law, we hold that *Hazine* does apply retroactively. Consequently, we conclude that the trial court erred by finding that plaintiffs' strict products liability claim against Cessna was barred by A.R.S. section 12–551.

▨ Cessna argues that *Hazine* does not apply retroactively because retroactive application would deprive it of a vested, substantive right to assert the defense provided in A.R.S. section 12–551. Because, in Arizona, any opinion is *presumed* to apply retroactively unless it states otherwise, we need not address this argument. *Zavala v. Arizona State Personnel Bd.,* 159 Ariz. 256, 264–65, 766 P.2d 608, 616–17 (App.1988) (supp.

opinion) (" *'[U]nless otherwise specified,* Arizona appellate opinions in civil cases operate both retroactively and prospectively.' ") (quoting *Law v. Superior Court,* 157 Ariz. 147, 160, 755 P.2d 1135, 1148 (1988) (supp. opinion)). The effect of the presumption is that it places the responsibility of deciding whether an opinion shall have retroactive application on the issuing court. Because the supreme court did not expressly limit *Hazine* to prospective application, we conclude that it does apply to this case. Accordingly, the trial court's order dismissing plaintiffs' strict liability claim against Cessna is reversed.

Cessna also argues that the jury verdict in favor of Cessna on the negligence claim renders any strict liability claim against it moot. Cessna contends that the jury verdict demonstrates that the jury believed the accident was the result of the pilot's "buzzing" the highway and not the result of vapor lock caused by a defect in the design or manufacture of the airplane. We disagree. As we stated above, the jury verdict for Cessna on the negligence claim must be reversed because it was tainted by the admission of the NTSB's probable cause conclusion. Thus, plaintiffs' strict liability claim against Cessna is *not* moot.

## C. Teledyne

### 1. Cross–Issue or Cross–Appeal

In its answering brief, Teledyne argues that we should affirm the jury verdict in its favor because the trial court erred by denying Teledyne's motion for a directed verdict on plaintiffs' claims. In other words, Teledyne argues that no evidence existed that its engine was defective. Plaintiffs argue, however, that Teledyne was required to raise this argument as a cross-appeal, and therefore, this court lacks jurisdiction to consider it. We conclude that Teledyne's argument is a properly raised cross-issue. Accordingly, we consider the issue on appeal.

In *Bowman v. Board of Regents of the Universities and State Colleges of Arizona,* 162 Ariz. 551, 559, 785 P.2d 71, 79 (App.1989), this court set forth a three-part rule for determining when, in the absence of a cross-appeal, an appellee may raise a cross-issue in its answering brief:

(1) The cross-issue must be an argument in support of the judgment, not merely in support of the ultimate disposition on grounds that would attack the judgment;

(2) The cross-issue must have been presented and considered by the trial court in rendering the judgment, whether or not the trial court ultimately rejected or simply ignored the issue in any disposition; and

(3) The cross-issue must not result in an enlargement of appellee's rights or a lessening of appellant's rights on appeal.

"Issues that do not meet this test, assuming they are otherwise appealable, must be the subject of a timely notice of cross-appeal." *Id.*

Here, the issue raised by Teledyne satisfies the *Bowman* criteria. Teledyne's argument that it was entitled to a directed verdict as a matter of law does not attack the judgment rendered on the jury verdict in its favor. A directed verdict, like a jury verdict, constitutes a finding that the plaintiff did not prove its case. Further, the fact that the trial court denied Teledyne's motion for directed verdict does not preclude Teledyne from raising this argument as a cross-issue. As required by the second *Bowman* factor, Teledyne presented the issue to the trial court, and the trial court considered it. Finally, a directed verdict would result in neither an expansion of Teledyne's rights, nor a diminishment of plaintiffs' rights on appeal.[3]

### 2. Propriety of Directed Verdict

Plaintiffs' theory at trial was that the Cessna 210 was defective because Cessna

---

**3.** Even if we were to find that the cross-issue violated *Bowman,* a question exists whether that would preclude our review of Teledyne's issue. Rule 13(b), Arizona Rules of Civil Appellate Procedure, was amended effective December 1, 1992, to clarify the procedure on cross-appeals. This change has called into question *Bowman's* continuing effectiveness. *See Larkin v. State ex rel. Rottas,* 175 Ariz. 417, 424–25, 857 P.2d 1271, 1278–79 (App.1993).

**38**

failed to provide a proper fuel line for venting vapor (the "vapor lock" problem). In addition, plaintiffs claimed that Cessna used an auxiliary fuel boost pump that could exceed the engine's prescribed fuel inlet pressures and flood the engine during an attempted restart. Plaintiffs argued that Teledyne should have warned Cessna of the problems Cessna would encounter by having a high pressure fuel pump. Plaintiffs also contend that Teledyne should have foreseen that Cessna might add such a pump and should have warned Cessna of the limits of fuel pressure for such operation. We are not persuaded. We conclude that plaintiffs presented no evidence from which reasonable people could conclude that Teledyne failed to warn Cessna of the limits of fuel pressure for proper operation of the engine or of problems created by a high pressure auxiliary fuel pump.[4]

■ A directed verdict should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008. A mere scintilla of evidence is insufficient to prevent a directed verdict. *Id.*

■ Plaintiffs correctly assert that "a product faultlessly made may be deemed 'defective' if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning." *Piper v. Bear Medical Sys., Inc.*, 180 Ariz. 170, 177, 883 P.2d 407, 414 (App.1993). Under this theory, a plaintiff generally must show that the defendant was "negligent and knew or should have known of the risk but failed to take reasonable precautions." *Id.;* accord W. Page Keaton et al., *Prosser and Keaton on the Law of Torts* § 99, at 697 (5th ed. 1984).

■ In order to determine whether Teledyne satisfied its duty to warn, we must consider the party to whom the information

was communicated, in this case, Cessna. Under the "learned intermediary doctrine," "the manufacturer's duty to warn is ordinarily satisfied if a proper warning is given to the specialized class of people that may prescribe or administer the product." *Piper*, 180 Ariz. at 178 n. 3, 883 P.2d at 415 n. 3; *see also Gaston v. Hunter*, 121 Ariz. 33, 47, 588 P.2d 326, 340 (App.1978). Here, it is indisputable that Cessna is a sophisticated consumer of the Teledyne engine.

In *Piper*, a case involving medical equipment, we rejected the manufacturer's argument that its instructions provided a sufficient warning. *Piper*, however, is distinguishable from this case. There, the plaintiff presented testimony that professionals who used the product did not understand the instructions to be a warning about the possible consequences of a "misuse" of the product. *Piper*, 180 Ariz. at 178, 883 P.2d at 415. Here, on the other hand, as early as 1969, Cessna knew that pumping fuel from an auxiliary fuel pump into the Teledyne engine might flood the engine. Otherwise, Cessna would not have installed a micro-switch in the T210 to prevent the auxiliary fuel pump from functioning in the high boost position while the engine was shut down or operating at reduced power settings.

Teledyne provided Cessna with the engine's complete specifications and informed Cessna that the engine was capable of receiving fuel only at pressures within a certain range. No evidence exists in the record that this information was insufficient to warn Cessna about the use of the TSIO–520 engine with Cessna's fuel system. We conclude that reasonable minds could not differ that Cessna, a leading manufacturer of aircraft, understood the possible consequences of infusing fuel into the Teledyne engine at excessive pressure. Because we conclude that Teledyne satisfied its duty to warn, the trial court erred in denying Teledyne's motion for a directed verdict. Accordingly, we affirm the judgment in favor of Teledyne on that ground.[5]

4. Plaintiffs do not address the argument in Teledyne's answering brief that no evidence exists under the *Orme School* standard that Teledyne's engine itself was defectively manufactured. We therefore consider the argument waived and do not address it.

5. Because of our holding, we need not address Teledyne's argument that it could not be held

## III. CONCLUSION

We affirm the judgment in favor of Teledyne and the grant of summary judgment in favor of APS. We reverse both judgments as to Cessna: the dismissal of plaintiffs' strict products liability claim, and the jury verdict in favor of Cessna on the negligence claim. This case is remanded to the superior court for further proceedings consistent with this opinion.

WEISBERG, P.J., and CONTRERAS, J., concur.

liable because of the 1983 overhauling of the engine by Ram Aircraft Modifications.