[Civil No. 4429.   Filed December 22, 1941.]

[120 Pac (2d) 417.]

LYRIC AMUSEMENT COMPANY, a Corporation, Appellant, v. JAMES JEFFRIES, a Minor, by Gertrude Watkins, as Guardian ad Litem, Appellee.

382

Messrs. Darnell, Pattee & Robertson, for Appellant.

Mr. Frank E. Thomas and Mr. Hoyt Irving, for Appellee.

LOCKWOOD, C. J.—James Jeffries, a minor, called plaintiff, brought suit against Lyric Amusement Company, a corporation, called defendant, for damages as the result of an injury received through

the alleged negligence of defendant. The jury returned a verdict in favor of plaintiff for the sum of $3,500, which was reduced by a *remittitur* to $1,250 in the superior court. The case is before us on an appeal by the defendant and a cross-appeal by plaintiff from the order of the superior court requiring the *remittitur* as a condition to denying the motion for new trial.

The first question for our consideration on the appeal is whether the evidence sustains the judgment. This evidence may be stated as follows: Defendant owns and operates a moving picture theatre in Bisbee, Arizona. On February 11, 1939, plaintiff, who was at the time about seven years of age, accompanied his older brother Donald to the theatre. They entered the building while the lights were turned up in the manner usual for movie theatres before the showing of pictures begins. The seats on the floor of the theatre were divided into three sections, separated by aisles running from the entrance towards the stage. The boys sat down somewhere in the middle section some half dozen rows from the front. About five minutes later the picture was thrown on the screen and the house lights were dimmed in the usual manner. After about ten minutes one of the ushers requested the boys to move further up in front. They went out into the right-hand aisle, passed down it to the front of the theatre, walked across and turned up the left-hand aisle. No usher accompanied them. Somewhere between the first and third row of seats plaintiff, who was walking a short distance ahead of his brother, fell and broke his arm, and it is for this injury, which was somewhat serious in its nature, he recovered damages.

There is nothing in the evidence introduced by plaintiff which shows just what occasioned his fall.

Plaintiff himself had no idea, nor did his brother who was with him. Nor is there any testimony in the record that there was any defect in the condition of the building or its fixtures which might have caused it.

After plaintiff had rested, defendant placed on the stand a boy who had attended the same performance at which plaintiff was injured, and he stated that he was sitting in the left-hand corner seat of the front row when plaintiff passed him just before the accident, and that the latter fell over the feet of the witness at the place and time when his arm was broken. This testimony was not contradicted nor impeached in any manner. He testified also that the accident occurred while the house lights were up and before the picture had started, and on this point he was contradicted by three witnesses.

At the request of the parties, after the oral testimony was in, the jury was permitted to visit the theatre where the accident occurred and enter it when all the lights were turned on so that they could walk around and see such portions of the interior of the auditorium as they saw fit, and then be seated while the house lights dimmed to the point they were usually dimmed during the projection of a picture, and sit there for five minutes while some picture was being shown and view the interior of the premises for the purpose of considering its lighting and the visibility while a picture was in progress.

Apparently, from the briefs, plaintiff abandoned any contention that there was any improper obstruction or defect maintained or caused by defendant which caused him to fall, and rested his case on the alleged negligence of plaintiff in requiring him to move from his seat while the house lights were dimmed for the projection of the picture, without pro-

viding an usher with a flashlight to light his way to his new seat. In other words, that the lighting was inadequate for him to change his seat safely without aid. It is the law that it is the duty of the proprietor of a theatre to provide a reasonably safe place for his patrons, in view of all the circumstances and conditions under which they have been invited to visit the theatre. The extent and nature of the care required will vary with circumstances.

■■ It is a well known fact, of which we take judicial notice, that in the exhibition of moving pictures it is necessary that a theatre be darkened to a very great extent, so much so that patrons entering the auditorium after the pictures have started are generally unable to see how to reach their seats safely without some special aid, until their eyes have become adjusted to the changed light, for it is a scientific fact that anyone passing from a brightly lighted place to a partially darkened room will require some time for the sight to become adjusted so that he can see properly in the latter place. For this reason most movie houses now provide ushers with flashlights, whose duty it is to assist patrons in reaching their seats, and we think some aid for that purpose must be furnished, in order that the owner of a theatre may be said to use due care in the seating of his patrons.

■ It is admitted that one of the defendant's employees directed plaintiff and his brother to take different seats in the auditorium from those which they originally occupied. It is further admitted that no effort was made to provide them with any aid to assist them in reaching other seats. We think that the question of whether the light in the theatre at the time was sufficient to make it safe for these boys to move as they were directed to do, without additional

light, was an issue of fact for the consideration of the jury. It was evidently so considered by both parties, for they requested that the jury visit the scene of the accident, under lighting conditions as nearly as possible similar to those which existed at the time of the accident, to consider whether the theatre was properly lighted. We must assume that the jury came to the conclusion that it was not the exercise of proper care for defendant's employee to direct plaintiff to change his seat under such conditions without assisting him to find a new seat, and we cannot say on the evidence as it appears in the record that it was not justified in so finding.

██ But was this negligence a proximate cause of the accident, for if it was not defendant is not liable therefor. It is urged that in determining this we must accept as true the evidence of the witness Billy Fowler that the immediate cause of the accident was that plaintiff fell over Fowler's feet. *Banco de Sonora* v. *Morales,* 23 Ariz. 248, 203 Pac. 328; *Illinois Bankers' Life Ass'n* v. *Theodore,* 44 Ariz. 160, 34 Pac. (2d) 423; *Otero* v. *Soto,* 34 Ariz. 87, 267 Pac. 947; *Crozier* v. *Noriega,* 27 Ariz. 409, 233 Pac. 1104. There was no direct contradiction of Fowler's testimony that plaintiff fell over the former's feet, but he was flatly contradicted as to the condition of the house lights at the time of the accident, a very important issue in the case, and if the jury believed he was mistaken on that point, we cannot say it was bound as a matter of law to accept his testimony on other matters. But assuming his statement of the immediate act which caused the fall is true, does that relieve defendant's liability?

██ Defendant claims we have then two separate and independent acts of negligence by different persons, and the question is, were both proximate

causes of the accident. The leading case in Arizona on this question is *Salt River Valley Water Users' Ass'n* v. *Cornum,* 49 Ariz. 1, 63 Pac. (2d) 639, 645. Therein we laid down the rule of proximate cause. Substantially speaking, it is as follows: The proximate cause of an event is that which in a natural and continuous sequence, unbroken by any new independent cause, produces the event. It is undoubtedly true that there may be more than one proximate cause, but it is very unusual to find two proximate causes which are not concurrent. The difference between concurrent and successive causes may be stated as follows: If two distinct causes are operating at the same time to produce a given result which might be produced by either alone they are concurrent, but if they are successive and unrelated in their operation, they cannot be concurrent, and one must be the proximate and one the remote cause. In such a case the proximate is the responsible cause and the law disregards the remote one. There is, however, one exception to the rule that two nonconcurrent acts cannot both be the proximate cause of an injury, and in the case above cited we stated this exception as follows:

" . . . Where the author of a negligent static condition should reasonably have anticipated that the primary and active negligence which started the sequence which produced the injury might occur and that it would act together with the static condition and produce injury, even though the two acts of negligence are not concurrent, they are both proximate causes of the injury and an action may be brought against either negligent person, though not against them jointly. . . . "

And quoting from *Seith v. Commonwealth Elec. Co.,* 241 Ill. 252, 89 N. E. 425, 24 L. R. A. (N. S.) 978, 132 Am. St. Rep. 204, said:

" ' . . . The test is whether the party guilty of the first act or omission might reasonably have anticipated the intervening cause as a natural and probable consequence of his own negligence, and, if so, the connection is not broken; but if the act of the third person, which is the immediate cause of the injury, is such as in the exercise of reasonable diligence would not be anticipated, and the third person is not under the control of the one guilty of the first act or omission, the connection is broken, and the first act or omission is not the proximate cause of the injury.' "

Applying this rule, the question reduced to the concrete form is whether defendant's usher, when she failed to furnish assistance for plaintiff to move his seat, had reasonable ground to anticipate that he might fall over the feet of seated patrons, in the manner in which he did, if such assistance was not given. We think it was the duty of the usher to anticipate the usual conduct of such patrons and the result thereof, but not extraordinary conduct and its effect. The ordinary conduct of a seated patron is to extend his feet forward to a greater or lesser degree, and a reasonably to be expected result of such conduct is that one passing in front of such patrons, if he is not advised by vision or otherwise of the position of their feet, may be tripped thereby. On the other hand, it is not to be anticipated that a seated patron will deliberately extend his foot an unreasonable distance for the purpose of tripping a passer-by. If Fowler's feet were in a normal position and plaintiff, passing too close by reason of the lack of light and assistance, accidentally fell over them, we think the test of the exception in the Cornum case, *supra,* was satisfied. If, on the other hand, Fowler deliberately extended his foot an abnormal length for the purpose of tripping plaintiff, the negligence of defendant was not a proximate cause of the accident.

Fowler did not state, in his oral testimony, which situation existed, but merely said "he ran over my foot and fell down." But he was asked to show the position of his foot, and did so in the presence of the jury. We must, therefore, assume, in view of the verdict, his position was that of the ordinary seated patron. If this be true, the jury was authorized to find negligence of defendant was a proximate cause of the accident.

■■■ The next question is whether a certain instruction given by the court was prejudicial error. It is, of course, our rule that instructions must be considered as a whole and not piecemeal. Defendant's position is that the questioned instruction imposes too severe a duty upon proprietors of moving picture houses. If the first clause of the instruction stood alone, without any further qualifications or exceptions, it would be an incorrect, or at least an incomplete, statement of the law, for it might be argued that it required the owner of the premises to insure the safety of his patrons. But when the instructions are read together it is obvious that the rule laid down is one of providing reasonably safe conditions under the circumstances of the case, and this, we think, is the duty imposed by law.

■■■ We consider next the cross appeal. After the verdict and judgment were rendered, defendant filed the usual motion to set aside the verdict and judgment and for a new trial. The court, being of the opinion that the damages awarded were excessive, ordered that if the sum of $2,250 was remitted, a new trial would be denied, otherwise it would be granted. Thereupon plaintiff remitted the $2,250, and the motion for new trial was denied. Had plaintiff refused to accept the condition and appealed from the order, we would consider whether it was an abuse of discre-

tion on the part of the trial judge. However, he accepted the condition and filed the *remittitur*. Having voluntarily remitted the amount specified in the order of the court, we think he may not now be heard to complain of the order. *Young* v. *Cowden*, 98 Tenn. 577, 40 S. W. 1088; *Town of Colorado City* v. *Liafe*, 28 Colo. 468, 65 Pac. 630; *Lynchburg Telephone Company* v. *Bokker*, 103 Va. 594, 50 S. E. 148; *Pensacola Gas Company* v. *Pebley*, 25 Fla. 381, 5 So. 593; *Koenigsberger* v. *Richmond Silver Mining Co.*, 158 U. S. 41, 15 Sup. Ct. 751, 39 L. Ed. 889.

The cases cited by plaintiff on this point do not apply to a situation where the plaintiff complied with the order of *remittitur*.

Upon the whole case we are of the opinion that the judgment of the trial court should be affirmed, and it is so ordered.

McALISTER and ROSS, JJ., concur.