577 P.2d 1084

**Roosevelt DYER and Betty Dyer, husband and wife, Appellants,**

v.

**BEST PHARMACAL, a Florida Corporation and D–M Pharmaceuticals, Inc., a Maryland Corporation, Appellees.**

No. 1 CA–CIV 3510.

Court of Appeals of Arizona,
Division 1,
Department B.

March 2, 1978.

Rehearing Denied April 4, 1978.

Review Denied May 2, 1978.

Rosen & Schneider, Ltd., by David Neal Rosen, Douglas L. Christian, Phoenix, for appellants.

Fennemore, Craig, von Ammon & Udall by Silas H. Shultz, Ruth V. McGregor, Stacy Olliphant, Phoenix, for appellee Best Pharmacal.

Lewis & Roca by Douglas L. Irish, Paul G. Ulrich, Phoenix, for appellee D-M Pharmaceuticals, Inc.

## OPINION

EUBANK, Presiding Judge.

Roosevelt and Betty Dyer brought an action against Best Pharmacal and D-M Pharmaceutical to recover for injuries sustained when Betty Dyer received an injection of NOL-L.A., a drug manufactured by D-M and distributed by Best. The Dyers appeal from the summary judgment entered in favor of Best and D-M. Since the record supports the trial court's determination that no action by Best or D-M proximately caused Mrs. Dyer's injuries, we affirm the summary judgment.

In March of 1974, Betty Dyer consulted Dr. Augustus Stewart, D. O., to obtain assistance in weight control. Dr. Stewart administered, by intermuscular injection, a quantity of NOL-L.A., an anorexiant drug. Mrs. Dyer left Dr. Stewart's office shortly after the injection, and by the time she reached her car she began to experience a "tingling sensation" in her head, accompanied by a loss of orientation. This condition continued during the late afternoon, the early evening, and lasted into the night. The next morning, Mrs. Dyer entered St. Joseph's Hospital in Phoenix with a primary diagnosis of subarachnoid hemorrhage. She lapsed into a coma for several weeks, and developed cardiovascular complications.

Dr. Stewart obtained his supply of NOL-L.A. directly from Best Pharmacal. Each vial of the drug arrived in a cardboard box, which also contained a package insert bearing the name of Best Pharmacal and information regarding the use and contraindications for the drug. The insert recommends the drug's use for many purposes, among them being its use as "an anorexant [sic] for control of short term obesity." The insert also instructs the doctor to administer the drug by injection. Among the contraindications listed for the drug are hypertension and cardiovascular disease. The record shows that Mrs. Dyer was suffering from hypertension.

The Dyers filed this action against Dr. Stewart, Best Pharmacal, and D-M Pharmaceutical.[1] Their action against the drug companies is founded on the theories of strict liability in tort and negligence in manufacturing and distributing an unsafe product.

Best and D-M answered the complaint, denying liability and subsequently moved for summary judgment. In opposition to the appellees' motions for summary judgment, the appellants submitted two affidavits. One was the affidavit of Dr. Carl Leventhal, M.D., Deputy Director of the Bureau of Drugs of the United States Food and Drug Administration. Dr. Leventhal testified that the drug NOL-L.A. is a "new drug," within the meaning of 21 U.S.C. § 321(p), a part of the Federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. § 301 et seq.; that Section 505 of the FDCA, 21 U.S.C. § 355, requires all new drugs be given the approval of the FDA before they are marketed; that he is the custodian of the Bureau records, including the New Drug Applications; and that there was no New Drug Application or approval on file for NOL-L.A. The second affidavit was that of Dr. Philip Walson, M.D., a Professor of Medicine at the University of Arizona School of Medicine. It sets forth Dr. Walson's qualifications, and contains several statements of Dr. Walson's opinion regarding the safety of NOL-L.A. for various uses. Dr. Walson maintains that it is unsafe to inject NOL-L.A., and that "under no circumstances should the package insert recommend that this drug be used for

---

1. Their action against Dr. Stewart is pending in the trial court.

weight control because the dangers far outweigh any medically known benefit to the user."

The appellants argue that Dr. Leventhal's affidavit establishes a violation of the FDCA, which constitutes negligence per se. They further contend that the affidavit of Dr. Walson supports recovery against the appellees on a theory of strict liability in tort. The appellees dispute the legal sufficiency of both affidavits, and assert that their actions could not have been the proximate cause of Mrs. Dyer's injuries. Since we agree with appellees' latter argument, we have no need to consider the sufficiency of the affidavits. For the purpose of this decision, we will accept the affidavits as sufficient.

█ We must admit having some difficulty in piecing together appellants' negligence per se argument. It is true that a person who violates a statute enacted for the protection and safety of the public is guilty of negligence per se. Even assuming for the purposes of review that Mrs. Dyer is one of the class that can raise the effect of non-compliance with the FDCA, appellants still have failed to explain exactly how the appellees' alleged violation of the FDCA by their failure to file a New Drug Application resulted in Mrs. Dyer's injuries. Dr. Leventhal's affidavit offers no enlightenment in this regard. From Dr. Walson's affidavit, we can only infer that, based on Dr. Walson's medical opinion, the appellants allege that the FDA might have refused to approve NOL-L.A. for use as an anorexiant in injectable form. We assume this to be appellants' argument, since Mrs. Dyer's injuries were unquestionably caused by the injection of NOL-L.A. for anorexiant purposes. Thus, the appellees' alleged negligence would be their recommendation that NOL-L.A. be injected for anorexiant purposes, and their sale and distribution of NOL-L.A. without FDA approval of that recommendation. No claim is made that NOL-L.A. was impure or defectively manufactured.

█ A claim of negligence per se does not obviate the need for the plaintiff to show that the defendant's actions were the proximate cause of her injuries. *Orlando v. Northcutt,* 103 Ariz. 298, 299–300, 441 P.2d 58, 59–60 (1968); *Valley Transp. System v. Reinartz,* 67 Ariz. 380, 382, 197 P.2d 269, 271 (1948); *Christy v. Baker,* 7 Ariz.App. 354, 355–56, 439 P.2d 517, 518–19 (1968). *See also Toole v. Richardson-Merrell, Inc.,* 251 Cal.App.2d 689, 705, 60 Cal.Rptr. 398, 410 (1967). The ultimate question here thus becomes whether the appellees' alleged negligence proximately caused Mrs. Dyer's injuries.

Our Supreme Court has broadly defined proximate cause as follows:

The proximate cause of an event is that which, in a natural and continuous sequence unbroken by any new, independent cause, produces the event, and without which the event would not have occurred. This connection is broken when a new or subsequent cause intervenes so as to become the sole factor producing the injurious result to the exclusion of the negligence of the first wrongdoer in its operation as an efficient factor therein, but it is not broken by the addition of another factor or cause which merely contributes to the result without superseding the efficient operation of the first cause.

*City of Douglas v. Burden,* 24 Ariz. 95, 101–02, 206 P. 1085, 1087 (1922). When two forces combine to produce an injury, they are labeled either concurrent or successive causes. If the forces are concurrent, both or either may be the proximate cause of the injury. If the two forces are successive, only the most immediate is the proximate cause of the injury. Our Supreme Court has stated the rule as follows:

The difference between concurrent and successive causes may be stated as follows: If two distinct causes are operating at the same time to produce a given result which might be produced by either alone they are concurrent, but if they are successive and unrelated in their operation, they cannot be concurrent, and one must be the proximate and one the remote cause. In such a case the proximate is the responsible cause and the law disregards the remote one.

*Lyric Amusement Co. v. Jeffries,* 58 Ariz. 381, 388, 120 P.2d 417, 420 (1941).

There are cases when the rule governing concurrent forces applies to successive causes of an injury. In those cases, the defendant's negligent course of conduct has ended and only the risk of harm created by the negligent conduct is present at the time of the injury. *See, e. g., Herzberg v. White,* 49 Ariz. 313, 66 P.2d 253 (1937); *Salt River Valley Water Users' Ass'n v. Cornum,* 49 Ariz. 1, 63 P.2d 639 (1937); *Collins v. County of Maricopa,* 15 Ariz.App. 354, 488 P.2d 991 (1971); *Zelman v. Stauder,* 11 Ariz. App. 547, 466 P.2d 766 (1970). In *Cornum, supra,* the defendant left several inches of the end of an electric pole guy wire protruding from the clamp holding the wire in place on the ground. This guy wire was about ten feet from the edge of a public highway. The plaintiff was walking along the edge of the highway when a car ran a stop sign at a nearby intersection and collided with another car. The car which had run the stop sign went out of control, and veered in the plaintiff's direction. As the plaintiff attempted to dodge, the careening vehicle, the projecting end of the guy wire caught his clothing and held him until he was struck by the car. The Court noted that the alleged negligence of the defendant "was not in active conduct, but in the creating and maintaining of a certain passive condition." 49 Ariz. at 9, 63 P.2d at 643. The rule in such a case is:

> Where the author of a negligent static condition should reasonably have anticipated that the primary and active negligence which started the sequence which produced the injury might occur and that it would act together with the static condition and produce injury, even though the two acts of negligence are not concurrent, they are both proximate causes of the injury and an action may be brought against either negligent person, though not against them jointly.

*Id.* at 12–13, 63 P.2d at 645. The Court found that the subsequent act was not foreseeable and reversed the trial court and ordered judgment for Salt River Valley Water Users. Thus, when it is foreseeable at the time the static condition is negligently created that a particular subsequent act of negligence might combine with it to produce an injury, either negligent person may be held liable. When the subsequent act is unforeseeable, the creator of the static condition cannot be held liable. *Compare Cornum, supra,* with *Herzberg, supra.*

We believe that the above analysis applies in this case. The alleged negligence of the appellees was not the only force responsible for Mrs. Dyer's injuries. The active conduct of a physician was necessary in order for Mrs. Dyer to receive the injection of NOL-L.A. This act by the physician included a consideration of the recommended uses of the drug, the recommended forms of its administration, and whether any contraindications of the drug's use were present. In this case, when Dr. Stewart undertook these considerations, the efficiency of the appellees' alleged negligent course of conduct ended, and only the risk of harm created by that conduct remained. Thus, under Arizona law, the appellees may be held liable only if it was foreseeable that Mrs. Dyer would receive an injection of NOL-L.A. from a physician to inhibit her appetite.

The package insert, included with the box of NOL-L.A. by Best, is very relevant. Such warnings and instructions for the use of prescription drugs are intended for the doctors administering the drugs. A drug manufacturer has discharged his duty to the public if he has properly warned the administering physician of the contraindications and possible side effects of the drug. *See Mulder v. Parke Davis & Co.,* 288 Minn. 332, 181 N.W.2d 882, 885 (1970); *Leibowitz v. Ortho Pharmaceutical Corp.,* 224 Pa.Super. 418, 431–32, 307 A.2d 449, 457 (1973). Causation is broken between the manufacturer and patient when the doctor disregards warnings. *See Magee v. Wyeth Laboratories, Inc.,* 214 Cal.App.2d 340, 351, 29 Cal.Rptr. 322, 328 (1963). In the recent case of *Carmichael v. Reitz,* 17 Cal.App.3d 958, 95 Cal.Rptr. 381 (1971), the California court summarized the law as follows:

It is the general rule that the duty of adequate warning by the manufacturer of an ethical [prescription] drug is discharged by its warning of hazards to doctors who may in the exercise of their medical judgments decide to use the drug as a part of their chemotherapy. [citations omitted] Absent special circumstances, known or foreseeable in the exercise of due care by the manufacturer, there is no duty to warn the patient. [citations omitted]

The rationale of the foregoing rule is: "(1) The doctor is intended to be an intervening party in the full sense of the word. Medical ethics as well as medical practice dictate independent judgment, unaffected by the manufacturer's control, on the part of the doctor. (2) Were the patient to be given the complete and highly technical information on the adverse possibility associated with the use of the drug, he would have no way to evaluate it, and in his limited understanding he might actually object to the use of the drug, thereby jeopardizing his life. (3) It would be virtually impossible for a manufacturer to comply with the duty of direct warning, as there is no sure way to reach the patient." (Rheingold, *Products Liability—The Ethical Drug Manufacturer's Liability* (1964) . . . 18 Rutgers L.Rev. 947, 987).

*Id.* at 989, 95 Cal.Rptr. at 400–01.

In the same way, we believe that a drug manufacturer cannot be required legally to foresee that a licensed physician will disregard express warnings regarding a drug's use. While the package insert recommended injecting NOL-L.A. for anorexiant purposes, it also expressly directed the doctor administering the drug to refrain from giving it to a patient with hypertension. It is undisputed that Mrs. Dyer suffer from hypertension. We believe it was therefore unforeseeable that Mrs. Dyer would receive an injection of NOL-L.A.

We are aware of the dispute between Dr. Stewart and Mrs. Dyer over whether Dr. Stewart failed to inquire about Mrs. Dyer's hypertension, or whether Mrs. Dyer misled Dr. Stewart about her condition. The eventual outcome of that dispute (see footnote 1) does not change our opinion here. Just as a drug manufacturer cannot be required to foresee a physician's negligence, neither can it be required to foresee that a patient might mislead a physician about her physical condition in order to obtain a prescription drug.

We hold, therefore, that under the facts here, the injection of NOL-L.A. into Mrs. Dyer was unforeseeable by the appellees. As a result, the alleged negligence of the appellees was not the proximate cause of Mrs. Dyer's injuries.

Similarly, in an action founded on strict liability in tort, the plaintiff must show that the unreasonably dangerous defect was the proximate cause of his injuries. *See O. S. Stapley Co. v. Miller,* 103 Ariz. 556, 560, 447 P.2d 248, 252 (1968); *McCarty v. F. C. Kingston Co.,* 22 Ariz.App. 17, 18, 522 P.2d 778, 779 (1974). We believe the rule of *Cornum, supra,* in the area of negligence applies as well to strict liability. From Dr. Walson's affidavit, we infer the defect in NOL-L.A. to be the recommendation on the package insert that it be injected as an anorexiant. Here, as before, the appellees cannot have foreseen that their recommendation would result in injury to Mrs. Dyer. Thus, either Dr. Stewart's negligence or Mrs. Dyer's misstatement of her physical condition superseded any defect that may have existed.

The summary judgment is affirmed.

WREN, J., concurs.

JACOBSON, J., concurs in result only.