IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

AMANDA WATTS, an adult individual, *Plaintiff/Appellant*,

*v.*

MEDICIS PHARMACEUTICAL CORPORATION, an Arizona corporation, *Defendant/Appellee*.

No. 1 CA-CV 13-0358
FILED 1-29-2015

Appeal from the Superior Court in Maricopa County
No.  CV2012-008081
The Honorable Lisa Daniel Flores, Judge

**JUDGMENT VACATED; REMANDED**

COUNSEL

Tidmore Law Offices, L.L.P., Phoenix
By Mick Levin
*Counsel for Plaintiff/Appellant*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Donald L. Myles, Jr., Lori L. Voepel, Josh M. Snell
*Counsel for Defendant/Appellee*

Haralson, Miller, Pitt, Feldman & McAnally, P.L.C., Tucson
By Stanley G. Feldman
        and
Knapp & Roberts, P.C., Scottsdale
By David L. Abney, Dana R. Roberts
*Co-Counsel for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association*

---

**OPINION**

Judge John C. Gemmill delivered the opinion of the Court, in which Presiding Judge Lawrence F. Winthrop and Chief Judge Diane M. Johnsen joined.

---

**G E M M I L L**, Judge:

**¶1**    Amanda Watts appeals the trial court's dismissal of her product liability action against Medicis Pharmaceutical Corporation. Watts's claim is based on injuries she allegedly suffered after using a prescription acne medication manufactured by Medicis.  The primary issues presented are whether the common law learned intermediary doctrine is inconsistent with Arizona's comparative fault tort system and whether the Arizona Consumer Fraud Act applies to consumer advertising by a drug manufacturer or seller.  For the reasons that follow, we vacate the dismissal of Watts's complaint and remand for further proceedings.

**BACKGROUND**

**¶2**    On an appeal from the grant of a motion to dismiss, we accept as true the well-pled facts in the complaint. *Fidelity Sec. Life Ins. Co. v. Dept. of Ins.*, 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998).  We construe the reasonable inferences from the well-pled facts in the light most favorable to the non-moving party. *Luchanski v. Congrove*, 193 Ariz. 176, 179 ¶ 17, 971 P.2d 636, 639 (App. 1998) (citing *Gatecliff v. Great Republic Life Ins. Co.*, 154 Ariz. 502, 508, 744 P.2d 29, 35 (1987)).

**¶3**    In April 2008, Watts, a minor at the time, sought medical treatment for chronic acne.  Watts's medical provider prescribed Solodyn, a prescription oral antibiotic with active ingredient minocycline.  Medicis, an Arizona corporation, manufactures and distributes Solodyn.  After receiving a prescription, Watts used Solodyn as prescribed for twenty weeks.  When Watts returned to the same medical provider in May 2010, again with concerns about acne, the provider again prescribed Solodyn, and Watts took it as directed for another twenty weeks.

**¶4**    Before using Solodyn, Watts received two informational publications providing details about the drug, neither of which disclosed any link between Solodyn use and the development of auto-immune

diseases. The first was a "MediSAVE" card, which her medical provider gave to her, that outlined a discount purchase program for Solodyn. The MediSAVE card and its accompanying information indicated that the safety of using Solodyn for longer than twelve weeks "has not been studied and is not known." Additionally, when she filled the prescription at a local pharmacy, Watts received an informational insert about Solodyn's possible side effects and safety considerations. That insert warned that patients should consult a doctor if symptoms did not improve within twelve weeks.

¶5 Watts does not allege that she received either the U.S. Food and Drug Administration (FDA) approved patient labeling or the full prescribing information for Solodyn that is provided to physicians. The FDA-approved patient labeling states that possible side effects of Solodyn use include joint pain and effects on the liver. Contrary to the MediSAVE card and insert Watts received, the full prescribing information warns specifically that lupus-like syndrome and autoimmune hepatitis are possible results associated with the "long-term" use of minocycline. It also warns, in a section labeled "Patient Counseling Information," that patients should be advised:

> Autoimmune syndromes, including drug-induced lupus-like syndrome, autoimmune hepatitis, vasculitis and serum sickness have been observed with tetracycline-class drugs, including minocycline. Symptoms may be manifested by arthralgia, fever, rash and malaise. Patients who experience such symptoms should be cautioned to stop the drug immediately and seek medical help.

¶6 In October 2010, Watts began to suffer from debilitating joint pain. After being hospitalized, Watts was diagnosed with drug-induced lupus and drug-induced hepatitis, both allegedly side effects of her use of Solodyn. Although she has recovered from the hepatitis, doctors predict that she may suffer from lupus for the rest of her life.

¶7 Watts filed a complaint against Medicis, alleging consumer fraud, product liability, and punitive damages claims. She alleged that Medicis knowingly used false pretenses and omitted material facts from the information presented to her regarding Solodyn's risks in order to induce her to buy and use Solodyn. She also alleged that the drug was unreasonably dangerous because Medicis failed to provide adequate warnings of its known dangers.

**¶8**          In response to Watts's complaint, Medicis filed a motion to dismiss for failure to state a claim under Arizona Rule of Civil Procedure 12(b)(6), which the trial court granted in December 2012.  Watts filed a timely Rule 59 motion for new trial, which the trial court denied in a signed order in April 2013.

**¶9**          Watts timely appeals the trial court's dismissal of her complaint and denial of her motion for new trial.  This court has jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

I.     Medicis's Jurisdictional Arguments

**¶10**          As a threshold matter, Medicis argues that this court does not have jurisdiction over Watts's appeal for two main reasons.  First, Medicis contends that Watts did not timely appeal because her Rule 59 motion did not extend the time for filing her notice of appeal.  Second, Medicis argues that Watts's notice of appeal is limited to the trial court's dismissal of her motion for new trial and did not constitute an appeal from the trial court's underlying judgment of dismissal under Rule 12(b)(6).  We independently review our jurisdiction over an appeal.  *Engle v. Landman*, 221 Ariz. 504, 508, ¶ 10, 212 P.3d 842, 846 (App. 2009).

     A.     Motion for New Trial Following Dismissal Under Rule 12(b)(6)

**¶11**          The trial court entered its judgment dismissing the complaint in January 2013, and Watts filed her notice of appeal in May 2013.  Her notice of appeal was timely, therefore, only if her Rule 59 motion extended the 30-day appeal period.   Ordinarily, a motion for new trial under Rule 59(a) extends the time to file a notice of appeal.  ARCAP 9(b)(1)(D).  Medicis argues that Rule 59(a) does not apply to a dismissal under Rule 12(b)(6) and therefore Watts's motion did not extend her time to appeal, meaning her notice of appeal was untimely.  Moreover, Medicis claims that the Rule 59(a) motion was not a time-extending motion because it was substantively deficient.  We disagree.

**¶12**          Medicis argues that because a dismissal under Rule 12(b)(6) does not require, and in fact precludes, any determination of facts by the court, a Rule 59 motion "for new trial" may not be filed from a ruling on a

Rule 12(b)(6) motion. Arizona courts, however, have previously held that Rule 59(a) affords a remedy even when the trial court has not engaged in fact-finding. A timely motion for new trial will extend the appeal time after a grant of summary judgment, s*ee Maganas v. Northroup*, 112 Ariz. 46, 48, 537 P.2d 595, 597 (1975), a dismissal for failure to prosecute, *see Hartford Accident & Indem. Co. v. Sorrells*, 50 Ariz. 90, 93–94, 69 P.2d 240, 242 (1937), and the denial of relief under Rule 60(c) for an inadvertently entered judgment, *see Tripati v. Forwith*, 223 Ariz. 81, 84, ¶ 14, 219 P.3d 291, 294 (App. 2009). "In fact a 'motion for new trial' is almost a misnomer," as Rule 59 does not require that there have been a trial. 2A Daniel J. McAuliffe & Shirley J. McAuliffe, *Arizona Practice Series*, Civil Trial Practice §30.8 (2d ed. 2014). Furthermore, allowing a party to file a motion for a new trial following a dismissal on the pleadings is consistent with Arizona's general principle that "[l]itigation should be concluded where possible in the trial court" rather than on appeal. *Maganas*, 112 Ariz. at 48, 537 P.2d at 597. Accordingly, we conclude that a timely motion for new trial under Rule 59(a) following a court's dismissal for failure to state a claim is a time-extending motion.[1]

**¶13**      Medicis also asserts that because the motion raised an argument not made in response to the motion to dismiss, it was substantively deficient and, as a result, should not extend the time to file a notice of appeal. The fact that a motion for new trial may be without merit, however, does not change its time-extending nature. *See* ARCAP 9(b)(1)(D) (specifying that the *denial* of a motion for new trial extends the time for appeal). Therefore, the motion for new trial was an appropriate, time-extending motion. Watts's notice of appeal was timely filed within thirty days after entry of the formal order denying the motion for new trial.

---

[1] Medicis also argues that Watts's motion for new trial did not properly set forth the grounds required by Rule 59(a). To be proper under Rule 59(a), a motion must invoke one or more of the grounds set forth in the rule and refer to Rule 59(a) as the motion's authority. *Farmers Ins. Co. of Ariz. v. Vagnozzi*, 132 Ariz. 219, 221–22, 644 P.2d 1305, 1307–08 (1982). Watts's motion cited Rule 59(a) and set forth a basis within that rule by arguing that the decision was contrary to law. Further, in denying the motion, the trial court gave no indication that it treated it as anything other than a motion for new trial under Rule 59. *See Vagnozzi*, 132 Ariz. at 222, 644 P.2d at 1308 (explaining that when the trial court treats a motion as a Rule 59(a) motion, the appellate court also will do so). Watts's motion was appropriately made and decided under Rule 59(a).

B.    Notice of Appeal

¶14          Next, Medicis raises a jurisdictional issue regarding the scope of Watts's notice of appeal.  Because the notice of appeal refers only to the trial court's ruling denying Watts's motion for new trial and not the prior dismissal and judgment, Medicis claims that on appeal, Watts may argue only the issues presented in her motion for new trial.  Accordingly, Medicis asserts that this court lacks jurisdiction to consider Watts's other arguments.  The record leads us to the opposite conclusion.

¶15          In its order denying Watts's Rule 59(a) motion for new trial, the court explained the following:

> The Court considered the parties' papers related to the pending motion, as well as the papers related to Defendant's September 4, 2012 motion to dismiss and the Court's December 11, 2012 ruling [granting Defendant's motion to dismiss].

Accordingly, in denying the motion for new trial, the court reviewed and considered the entirety of the arguments related to the dismissal of Watts's claims under Rule 12(b).

¶16          Watts's notice of appeal specifically references the court's order denying the motion for new trial as the "final ruling of the court," thereby incorporating the breadth of that ruling:

> **NOTICE IS GIVEN** that Plaintiff Amanda Watts, by and through counsel undersigned, hereby appeals to the Court of Appeals, Division One, *from the final Ruling of the Court*, *entered on April 30, 2013*, in favor of Defendant Medicis Pharmaceutical Corporation, signed by the Honorable Lisa Daniel Flores.

(Emphasis added.)

¶17          Generally, when a notice of appeal following a motion for new trial does not specifically or separately appeal the underlying judgment, this court's review is limited to issues raised in the motion. *Sandretto v. Payson Healthcare Mgmt., Inc.*, 234 Ariz. 351, 355, ¶ 7, 322 P.3d 168, 172 (App. 2014).  The Arizona Supreme Court has explained, however,

that the sufficiency of a timely notice of appeal should be liberally construed "if the result is neither misleading nor prejudicial to the appellees involved." *Hanen v. Willis*, 102 Ariz. 6, 8, 423 P.2d 95, 97 (1967). Although an appellant who fails to follow the rules of appellate procedure risks losing the right to judicial review on the merits, imposing such a sanction on a timely filed appeal "should generally result upon a showing of prejudice to an adverse party." *Hill v. City of Phoenix*, 193 Ariz. 570, 574, ¶ 18, 975 P.2d 700, 704 (1999). Absent such prejudice, "society's interests in adjudicating appeals on the merits should govern." *Id.*

¶18 For example, in *Wendling v. Southwest Savings & Loan Association*, 143 Ariz. 599, 694 P.2d 1213 (App. 1984), the court held it had jurisdiction only to review the issues raised in a Rule 59 motion when the notice of appeal referenced only that motion. *Id.* at 601, 694 P.2d at 1215. Significantly, the Rule 59 motion in that case was based "*solely* on the grounds of newly discovered evidence" and did not otherwise allege a specific error with respect to the underlying judgment. *Id.* (emphasis in original).

¶19 The scope of the notice of appeal in this case is not as narrow as Medicis claims, nor is it as narrow as the notice of appeal in *Wendling*. Unlike *Wendling*, Watts's Rule 59(a) motion was not based on newly discovered evidence, but on what Watts asserts was an error in the underlying judgment. Moreover, Watts appealed from the "final Ruling of the Court, entered on April 30, 2013." As explained above, the April 30 ruling was not merely a denial of the motion for new trial, because the trial court noted that it had also considered again the "the papers related to Defendant's September 4, 2012 motion to dismiss and the Court's December 11, 2012 ruling" granting the motion to dismiss. By referencing the April 30 ruling as the "final" ruling, therefore, Watts's notice of appeal sufficiently encompasses both the arguments made in the new trial motion and in the earlier motion to dismiss.

¶20 Furthermore, Medicis has not established that it suffered any prejudice from Watts's failure to specifically reference the underlying judgment. In *Hanen*, for example, a notice of appeal incorrectly identified the date of the judgment being appealed. 102 Ariz. at 9, 423 P.2d at 98. Although the incorrectly stated date raised a question as to the timeliness of the appeal, the court nonetheless exercised jurisdiction because there was "no evidence in the record that the incorrect date misled or prejudiced appellees." *Id.* In this case, Medicis filed an answering brief on appeal that responded on the merits to each of Watts's arguments in her opening brief.

It did not raise any issue regarding the alleged deficiency in the notice of appeal. In fact, Medicis raised this specific jurisdictional challenge just one day before oral argument in this court. Medicis was not, therefore, prejudiced or misled by the notice of appeal.

¶21       For these reasons, we conclude that Watts's notice of appeal was sufficient to invoke our appellate jurisdiction regarding each of the arguments she made in the trial court. We therefore have jurisdiction to hear the appeal on the merits.

II.    Watts's Appeal

¶22       We review de novo a dismissal for failure to state a claim under Rule 12(b)(6) and will affirm if there is no legal theory under which the plaintiff could be entitled to relief. *Blankenbaker v. Marks*, 231 Ariz. 575, 577, ¶ 6, 299 P.3d 747, 749 (App. 2013).

   A.    Consumer Fraud

¶23       First, Watts alleges that Medicis violated Arizona's Consumer Fraud Act, A.R.S. § 44-1522 *et seq.*, by affirmatively misstating the known risks of Solodyn to induce consumers to purchase the medication. We review the interpretation of a statute de novo, *City of Phoenix v. Harnish*, 214 Ariz. 158, 161, ¶ 6, 150 P.3d 245, 248 (App. 2006), and look first to the plain meaning of the statutory language as the most reliable indicator of its construction, *New Sun Bus. Park, L.L.C. v. Yuma County, LLC*, 221 Ariz. 43, 46, ¶ 12, 209 P.3d 179, 182 (App. 2009).

¶24       The Arizona Consumer Fraud Act (CFA) prohibits "any deception, deceptive or unfair act or practice, fraud, false promise, [or] misrepresentation" in connection with "the sale or advertisement of any merchandise." A.R.S. § 44-1522. "Merchandise" includes "objects, wares, goods, commodities, [or] intangibles[.]" A.R.S. § 44-1521(4). As our supreme court has determined, the CFA also provides consumers with an implied private cause of action against persons who violate the act. *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576, 521 P.2d 1119, 1122 (1974). The elements of a private claim are a false promise or misrepresentation, made in connection with the sale or advertisement of merchandise, and the plaintiff's consequent and proximate injury from reliance on such a misrepresentation. *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 342, 666 P.2d 83, 87 (App. 1983). Such reliance need not be

reasonable. *Parks v. Macro-Dynamics Inc.*, 121 Ariz. 517, 520, 591 P.2d 1005, 1008 (App. 1979).

**¶25** Medicis argues that because prescription drugs are not merchandise as defined by the act, Watts's claim was properly dismissed. As this court has explained, the purpose of the CFA is to protect consumers from being deceived by unfair business practices in the sale and advertisement of merchandise. *State ex rel. Horne v. AutoZone, Inc.*, 227 Ariz. 471, 477, ¶ 12, 258 P.3d 289, 295 (App. 2011), *vacated in part on other grounds by State ex rel. Horne v. AutoZone, Inc.*, 229 Ariz. 358, 275 P.3d 1278 (2012). Medication is "merchandise" as defined by the plain language of the statute: it is a tangible good available for purchase in the marketplace.

**¶26** Moreover, prescription medication is often advertised and sold to consumers in a manner similar to other consumer goods, implicating the need for the protection of the CFA. Although a medical professional must first issue a prescription in order for a consumer to obtain certain drugs, consumers discuss medications with their medical providers and may express preferences based on advertising. Consumers also have a meaningful choice whether to purchase and use particular drugs once prescribed. As a result, consumers may be deceived through fraudulent misrepresentations in connection with the sale of prescription drugs just as in the sale of traditional consumer goods. We therefore hold that the CFA applies to the sale and advertisement of prescription medications.

**¶27** Watts's complaint alleges that Medicis's promotional materials and product labeling affirmatively and falsely state that the safety of using Solodyn for longer than twelve weeks is unknown. She also alleges that she relied on those statements to her detriment when deciding to take Solodyn and that her use of Solodyn was the proximate cause of her injury. Accordingly, Watts adequately pled the elements of a private cause of action under the CFA. The trial court erred in dismissing the claim.

      B.     Product Liability, UCATA, and the Learned Intermediary Doctrine

**¶28** Watts also contests the trial court's dismissal of her common law product liability claim on the basis of the learned intermediary doctrine. Watts argues that the doctrine is both outdated in light of modern medical practice and legally inconsistent with the Uniform Contribution Among Tortfeasors Act (UCATA), codified at A.R.S. § 12-2501 *et seq*.

### 1. History of the Learned Intermediary Doctrine

**¶29** This court first adopted the learned intermediary doctrine in 1978. *Dyer v. Best Pharmacal*, 118 Ariz. 465, 468, 577 P.2d 1084, 1087 (App. 1978). Under this doctrine, a manufacturer is not liable for failing to warn consumers of a product's potential risks so long as it provides a proper warning to the specialized class of people who are authorized to sell, install, or provide the product. *Id.; see also Davis v. Cessna Aircraft Corp.*, 182 Ariz. 26, 38, 893 P.2d 26, 38 (App. 1994) (applying the learned intermediary doctrine to a manufacturer of airplane parts). In the context of a prescription drug, a physician is presumed to act as an intermediary whose services and advice are necessary before a consumer may receive the drug. *Dyer*, 118 Ariz. at 468, 577 P.2d 1087.

**¶30** In adopting the learned intermediary doctrine, this court characterized it as a doctrine of proximate causation. *Id.* at 467, 577 P.2d at 1086 ("The ultimate question here thus becomes whether the appellees' alleged negligence proximately caused [the plaintiff's] injuries."). The *Dyer* court explained that a prescribing physician's actions in failing to warn the patient of a drug's risks would constitute unforeseeable, superseding forces that would break the chain of causation between a drug manufacturer's distribution of the product and a consumer's harm. *Id.* at 469, 577 P.2d at 1088 ("a drug manufacturer cannot be required legally to foresee that a licensed physician will disregard express warnings regarding a drug's use").

**¶31** In its application, the learned intermediary doctrine appears to be less a rule of causation and more a standard for determining when a drug manufacturer has satisfied its duty to warn. *See Dole Food Co., Inc. v. North Carolina Foam Indus., Inc.*, 188 Ariz. 298, 302–03, 935 P.2d 876, 880–81 (App. 1996) (assessing factors to determine when, under the learned intermediary doctrine, the "manufacturer's duty to warn is ordinarily satisfied"); *Davis*, 182 Ariz. at 38, 893 P.2d at 38 (applying the learned intermediary doctrine "[i]n order to determine whether [a manufacturer] satisfied its duty to warn"); *Piper v. Bear Medical Sys., Inc.*, 180 Ariz. 170, 178, 883 P.2d 407, 415 (App. 1993) (discussing defendant's argument that its "duty to warn was satisfied by warning doctors under the learned intermediary doctrine" (internal citations omitted)).

**¶32** Therefore, under the learned intermediary doctrine, a manufacturer satisfies its duty to warn so long as it provides adequate

information to the party who prescribes, installs, or facilitates the use of a product. Applying the doctrine in this case would shield Medicis from liability for insufficiently warning Watts about Solodyn's risks so long as Medicis provided adequate instructions and warnings to the prescribing physician.

2. Uniform Contribution Among Tortfeasors Act

¶33 In 1984, Arizona significantly amended its tort liability scheme by adopting UCATA. Before UCATA, Arizona common law imposed joint and several liability when multiple tortfeasors were responsible for a single injury to a plaintiff. *State Farm Ins. Co. v. Premier Manufactured Sys., Inc.*, 217 Ariz. 222, 224, ¶ 8, 172 P.3d 410, 412 (2007). Under the common law system, a co-defendant who paid more than his or her proportionate share of a plaintiff's damages did not have the right to seek contribution from his fellow tortfeasors. *Id.* That defendant was therefore left to bear the risk of a co-defendant's insolvency. *Id.* UCATA helped alleviate the harshness of such a result by allowing a co-defendant in a tort action to seek contribution from other tortfeasors. *Id.*

¶34 In 1987, UCATA was amended to abolish joint liability between co-defendants in most circumstances. *Id.* at 225, ¶ 12, 172 P.3d at 413. The 1987 amendment established a system of several-only liability, or pure comparative fault, making each co-defendant in a tort case liable for no more than his or her respective percentage of fault. In *Premier Manufactured Systems*, the Arizona Supreme Court further explained the effect of UCATA on strict product liability cases. 217 Ariz. at 227, ¶ 21, 172 P.3d at 415. Under UCATA, each defendant in a product liability case is individually responsible for its own contribution to the plaintiff's injury, independent of the actions of the co-defendants: "the various participants in the chain of distribution are liable not for the actions of others, but rather for *their own actions* in distributing the defective product." *Id.* at 226, ¶ 20, 172 P.3d at 414 (emphasis in original). The result is that the burden of an insolvent defendant now rests on the plaintiff, not on other defendants. *Id.*

3. The Learned Intermediary Doctrine and UCATA

¶35 Although the court of appeals has followed the learned intermediary doctrine since 1978, the Arizona Supreme Court has never explicitly adopted or commented on the doctrine. This court must consider the continued viability of the doctrine in light of UCATA's approach to allocating liability. *See Green v. Lisa Frank, Inc.*, 221 Ariz. 138, 148, ¶ 20, 211

P.3d 16, 26 (App. 2009) (explaining that a "statutory provision authorized by the Constitution always supersedes the common law") (quoting *State ex rel. Conway v. Glenn*, 60 Ariz. 22, 30, 131 P.2d 363, 367 (1942)). In doing so, we conclude that protecting a prescription drug manufacturer from possible liability for its own actions in distributing a product, simply because another participant in the chain of distribution is also expected to act, is inconsistent with UCATA. *See Premier Manufactured Sys.*, 217 Ariz. at 227, ¶ 21, 172 P.3d at 415.

**¶36** As the Supreme Court explained in *Premier Manufactured Systems*, UCATA's ultimate effect was to prevent a partially responsible defendant from being held liable for the damages caused by his co-defendant. *Id.* at 224, ¶ 8, 172 P.3d at 412. Under the learned intermediary doctrine, however, a prescribing physician may bear all of the responsibility when a consumer is given an inadequate warning about a drug, even when a manufacturer played some role in making that warning insufficient. In fact, the learned intermediary doctrine precludes a complete assessment of comparative fault among tortfeasors because it preemptively limits the scope of a manufacturer's duty. *See Dyer*, 118 Ariz. at 468, 577 P.2d at 1087 (explaining that once a physician takes an active role in prescribing the medication, "only the risk of harm created by that conduct remain[s]."). As such, applying the learned intermediary doctrine in the context of prescription pharmaceuticals conflicts with both UCATA and the holding of *Premier Manufactured Systems* that each defendant in a tort case is liable for his or her own respective share of fault, no more and no less.

**¶37** This conclusion is further supported by the realities of modern-day pharmaceutical marketing. As Watts points out, drug manufacturers are turning with increasing frequency to direct consumer advertising to promote their products. *See State ex rel. Johnson & Johnson Corp. v. Karl*, 647 S.E.2d 899, 908 n.14 (W. Va. 2007) (discussing increased nation-wide spending in direct consumer marketing of prescription medications). Consumers are regularly presented with advertisements for medications to treat a variety of symptoms, prompting them to ask, encourage, and even pressure their medical providers to prescribe these brand-name medications. Tamar V. Terzia, Note, *Direct-to-Consumer Prescription Drug Advertising*, 25 Am. J.L. & Med. 149, 157–58 (1999). Similarly, Internet sites and medical databases give consumers access to a wealth of third-party and manufacturer-provided information about pharmaceutical products. *Johnson*, 647 S.E.2d at 907 n.12. While it is true that a patient must first receive a prescription from a "learned intermediary" in order to obtain prescription drugs, a physician no longer

is necessarily the consumer's sole source of information about the effects, benefits, and risks of the medications he or she takes.

**¶38** Accordingly, under our system of comparative fault, when the manufacturer of a product furnishes false or misleading information to the consumer, that manufacturer should not be shielded from liability simply because it provided adequate warnings to a third party. Instead, whether a consumer was adequately warned should ordinarily be determined by examining the actions of all involved in the chain of distribution. *See Premier Manufactured Sys.*, 217 Ariz. at 227, ¶ 21, 172 P.3d at 415. Otherwise, a consumer may be left without recourse against a manufacturer in a situation where an adequate warning to a prescribing physician is undermined or negated by the flawed or incomplete representations of the manufacturer to the consumer. Elimination of the learned intermediary doctrine in these circumstances allows a fair allocation of fault under UCATA, and a consumer who is harmed by false or misleading information from either a manufacturer or the prescribing physician may recover in accordance with each defendant's percentage of fault. In short, the learned intermediary doctrine cannot coexist with UCATA.

**¶39** In this case, Watts's complaint alleges that she saw and relied on information produced and distributed by Medicis, including a savings program card containing information about Solodyn and a prescription insert included with the drug itself. These informational materials indicate that the safety of using Solodyn for longer than twelve weeks was unknown, but did not provide any information about the risk of autoimmune disorders such as drug-induced lupus.

**¶40** Watts also alleges that she relied on these manufacturer-provided materials in choosing to take Solodyn at her physician's recommendation. Notwithstanding the actions of any prescribing physician, Watts's allegations give rise to questions of fact regarding whether Medicis adequately warned Watts about the risks of Solodyn and whether the alleged inadequacy of such a warning contributed to Watts's injuries. Accordingly, Watts has identified a legal theory under which she may be entitled to relief against Medicis, meaning her claim does not fail as a matter of law under Rule 12(b)(6).[2]

---

[2] Watts also argues that the learned intermediary doctrine violates Article 18, section 6 of the Arizona Constitution. But because we decide the issue

**¶41** In reaching this conclusion, we depart from this court's prior holdings applying the learned intermediary doctrine. However correct the *Dyer* court's foreseeability and causation analysis may have been in 1978, it is not persuasive now; and the learned intermediary doctrine is inconsistent with UCATA.

### C. Punitive Damages

**¶42** Finally, Watts claims punitive damages against Medicis for "consciously pursu[ing] a course of conduct" which created a "substantial risk of significant harm" to others: namely, misrepresenting its knowledge of the risks of Solodyn use for longer than twelve weeks. The trial court dismissed Watts's punitive damages claims because the underlying claims were also dismissed. Because we vacate the dismissal of Watts's consumer fraud and product liability claims, we also vacate the dismissal of her punitive damages claim.

**¶43** Medicis argues that even if the underlying claims are reinstated, both Arizona and federal law preclude Watt's punitive damages claim. Under A.R.S. § 12-701(A), the maker of a drug is not liable for punitive damages if the drug was manufactured and labeled in accordance with FDA standards. The potential application of that statute requires more factual development than exists in this record. Accordingly, we remand Watts's claim for punitive damages.

---

on a statutory basis, we decline to address this constitutional claim. *See Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 273, 872 P.2d 668, 677 (1994) (explaining that "if possible we construe statues to avoid unnecessary resolution of constitutional issues").

## CONCLUSION

**¶44**     For these reasons, we vacate the judgment of dismissal and remand for further proceedings consistent with this opinion.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama